59 U.S. 297 (1855)
18 How. 297
JOHN DOE, ex dem. JAMES B. McCALL, HENRY V. McCALL, AND MARY SIDNEY McCALL, PLAINTIFFS IN ERROR
v.
WILLIARD CARPENTER AND JOHN A. REITZ.[*]
Supreme Court of United States.

*298 It was submitted on printed arguments by Mr. Dunn, for the plaintiffs in error, and Mr. Baker, for the defendants.
Mr. Justice NELSON delivered the opinion of the court.
This is a writ of error to the circuit court of the United States for the district of Indiana.
The suit in the court below was an action of ejectment by the plaintiffs to recover the possession of certain town lots in the city of Lamasco. They proved on the trial, that their father, James B. McCall, was the owner of an undivided fourth *299 of a certain part of said city, and had been in the possession of the same, and died in 1840; and that they were his heirs at law.
The defendants set up, in bar of the action, certain proceedings in partition, embracing the premises in question, in the circuit court of the fourth judicial district of Indiana.
The bill in partition was filed by the tenants in common of the town lots with McCall in his lifetime, against his children and heirs, the present plaintiffs. The two sons were non-residents of the State, at the time, and did not appear or answer to the bill. The daughter was a resident of the State, and was served personally with the subpna. She and the younger brother were under age, for whom guardians ad litem were appointed by the court.
The bill, after setting out the interests of the respective tenants in common, and that partition had been agreed upon between them, describing particularly the manner in which the partition was to be made, and the portions assigned to each in the arrangement, charges, that after the agreement, J.B. McCall sold and conveyed all his undivided interest, to wit, one undivided fourth part of the town property, to Hugh Stewart for the sum of $11,500, and that shortly afterwards, and before he executed deeds of partition, according to the agreement, departed this life, leaving three children, his heirs at law, James B. McCall, non-resident of this State, and Henry McCall, also a non-resident, and Mary S. McCall, who are infants under the age of twenty-one years. The bill further charges, that the several proprietors, including Stewart, the grantee of McCall, had already interchanged deeds of partition, according to the agreement, or were ready to do so; and that they were ready to execute to the heirs deeds of all their right to subdivision No. 3 and 6 of the southeast quarter of section twenty-three, in town 6, and of all other portions to which the heirs were entitled; and then closes by stating, that, inasmuch as your orators are unable to obtain relief in the premises, except by an interposition of the court of chancery, they, for the purpose of perfecting their several titles to their respective portions of said property, pursuant to the agreement in partition, pray that the heirs be made defendants; that a guardian ad litem be appointed for the two infant heirs, that they may answer the bill; and if the same should be found true, that the court would appoint three commissioners to make deeds of partition, &c.
The bill was taken as confessed against the adult heir, and against the others upon the answer put in by the guardian; no proof, for aught that appears, having been given. The court decreed that the prayer of the complainants be granted; and *300 that C.D. Bourne, C. Baker, and J.E. Blythe be commissioners to make deeds, &c., to the complainants, agreeably to the partition mentioned in the bill, and pursuant to, and agreeable with the said sale and conveyance made by James B. McCall, deceased, of his undivided interest in said town property, to the complainant, Hugh Stewart.
Deeds were executed in pursuance of the directions in the decree, and reported to the court and confirmed.
It appeared that McCall, besides being a joint owner in the town property which he had conveyed to Stewart, also owned, jointly with the complainants, (except Stewart,) one fourth of the southeast quarter of section No. 23, township 6, adjoining the town, and which descended to his heirs and was embraced in the bill of partition.
The counsel for the plaintiffs, when this record of partition was offered in evidence by the defendants, objected to the admission, on the ground that the decree was void for want of jurisdiction of the court; and also for fraud apparent on the face of the proceedings. The objection was overruled. It appeared that the defendants claim title from Stewart, the grantee of McCall.
They then rested, and the counsel for the plaintiffs then produced and read the conveyance from their father to Stewart mentioned in the bill of partition, and offered to prove that the conveyance was obtained by fraud on the part of Stewart, and also, that, at the time of its execution, their father was of unsound mind and incapable of making a valid contract; that said unsoundness was well known to Stewart, and that he took advantage of it in obtaining the deed; that the consideration of $11,500 mentioned was never paid, that $6,000 in depreciated state scrip was all that was ever paid or agreed to be paid, and that the defendants purchased of Stewart with full knowledge of all the facts; that the real estate purported to be conveyed by the deed was worth at the time at least $20,000.
To all which evidence the defendant's counsel objected, on the sole ground that the plaintiffs were barred by the record of the proceedings in partition, which objection was sustained by the court, and the evidence excluded.
The jury, under the direction of the court, rendered a verdict for the defendants.
We think the court erred in excluding this evidence.
The binding effect of the decree, in the chancery suit, is sought to be maintained upon the ground that the proceedings were instituted not only for the purpose of making partition, but also to quiet the title between the parties, and especially the title of Stewart under the conveyance from McCall, and that the children *301 and heirs were made parties for this reason, and that the proceedings, in this aspect, being in the nature of proceedings in rem, would operate upon the title and bind the heirs, whether they appeared or not, if notice had been given in conformity with the statute or law of the State.
But we think the obvious answer to this view is, that the bill has not been framed in any such aspect, or for any such purpose, either in the body of it or in the prayer. There is no suggestion of any imperfection in the title of Stewart, under the deed of McCall, or of any imputation or questioning of the genuineness or validity of it; nor does the prayer ask for a decree to confirm the deed or the title to Stewart.
The only pretext for the ground now taken to bind the heirs, is in the allegation as follows, namely: "As your orators are unable to obtain relief in the premises, except by the interposition of a court of chancery, they, for the purpose of perfecting their several titles to the respective portions of said property, agreeably with and in pursuance of said agreement of partition, would respectively pray," &c., and then follows the prayer for partition.
Now, it is manifest that this allegation refers simply to the subject of providing for the mutual releases or conveyances of the joint interest in the property, so that each might become vested, severally, with the title to his respective share, and nothing beyond this, as is further evinced by the prayer of the bill, which is, that if the allegations in the bill should be found true, not that Stewart should be quieted in his title under McCall, but that three commissioners be appointed to make the partition, &c. So in respect to the decree. It simply orders that the prayer of the bill of the complainants be granted, appoints the commissioners, and directs them to make the partition, by the execution of the deeds of conveyance, release, and partition to the complainants, according to their respective rights, &c.
The deeds of the commissioners have also been referred to as helping out the binding effect claimed for these proceedings.
The deed of the commissioners to Stewart may be taken as a sample of all of them. It recites their appointment, the object of it, to wit, execute the partition deeds, &c., and adds: "and to perfect the title of said Hugh Stewart to the interest heretofore conveyed to him in said property, by the said McCall in his lifetime,"  they then go on and convey "all the right, title, and interest, claim and demand whatsoever of the said James B. McCall, deceased, at the time of his death, and of his heirs, naming the three defendants, since his decease, or at any other time, and of all or any other heirs or heir whatsoever, of the said *302 James B. McCall, deceased," &c.; seeking to bind those not made defendants as well as those who were.
The answer to all these recitals is, that they have no binding force or effect beyond what is derived from the decree of the court appointing the commissioners; and as that simply conferred authority on them to execute mutual conveyances and releases for the purpose of making partition between the parties, any recital going beyond this is nugatory. Neither should the simple confirmation of the deeds by the court be construed as intending to go beyond the terms and directions of the decree.
The case, then, is brought down to the question, so far as the effect and operation of the chancery suit are concerned, whether or not these defendants are estopped by the decree from impeaching the deed of their father to Stewart. And, in respect to this question, we may concede that, for the purposes of partition, the court, under the statute and law of Indiana, had jurisdiction of the subject-matter and were competent to make the partition.
The point is, whether or not the right of the plaintiffs to impeach this deed was involved in these proceedings, so as to be deemed res judicata, and all further examination or inquiry foreclosed.
As we have already seen, the question as to its validity was not presented upon the pleadings in that suit, nor did it become the subject of inquiry or examination in the course of the proceeding, nor did it enter into the decree of the court in the determination of the case. And the better opinion is, that no such question could have been raised by the defendants in that proceeding, if they had sought to invalidate the deed. The most that the court would have been justified in doing, in the usual course of proceeding, would have been to have stayed the suit in partition till the question could have been settled at law. The proceedings in partition are not appropriate for a litigation between parties in respect to the title.
As to the binding effect of judgments or decrees, the general rule is, that the judgments of courts of concurrent jurisdiction are not admissible in a subsequent suit, unless they are upon the same matter, and directly on the point; when the same matter is directly in question, and the judgment in the former suit upon the point, it will then be as a plea, a bar, or as evidence, conclusive between the parties. 2 Phillips Ev. 13. So a judgment is conclusive upon a matter legitimately within the issue, and necessarily involved in the decision. 4 Cow. 559; 8 Wend. 9; C. & H. notes, part 2, note 22.
Testing the case by this principle, it seems quite clear that the proceedings in partition constituted no defence to this *303 action; no question was made upon the deed by the pleadings, nor any judgment given upon it; nor was any such question necessarily involved in the partition suit.
Besides, two of the defendants, plaintiffs here, were non-residents of the State, and neither appeared, nor were served personally with process. As to them, the proceedings were purely in rem, and the decree acted only upon the res or subject-matter. And, as to the subject-matter, the bill on its face shows, that these two plaintiffs had no interest in nor connection with the partition, except as respected the southeast quarter of section twenty-three. This tract was not included in the deed to Stewart, and of course descended to the heirs. Being tenants in common with the complainants, the decree of partition might operate upon it and bind them. But, as to the premises now in dispute it could have no effect, as it appears, by the averment of complainants themselves, the defendants had no interest in it. The title was in Stewart. The decree, therefore, operating simply in rem, could only operate upon such interest or estate of the defendant as was shown in the bill, and properly the subject of the partition against them. Beyond this, it was ineffectual, either as to its direct operation, or when in question collaterally.
Proceedings of this character are allowed to conclude the rights of the absent party, only as it respects property, whether real or personal, involved in the suit, the property of the party proceeded against. They act upon the thing, and bind the party in respect to it. Now, that in this case, so far as the two non-resident defendants were concerned, was their interest in the southeast quarter of section twenty-three? They were strangers as regarded any other piece or parcel of land involved in the proceedings.
Then, as to Mary, the daughter, the process was served personally upon her; she was an infant, and appeared by a guardian ad litem. But this was simply an appearance, as the representative of her interest in the undivided parcel which had descended to the heirs. The bill shows that she had no interest in the partition, except as to this; all the other parcels of which partition was sought belonged to other parties, and concerned them alone; as to these, John Doe might have been made a party with as much propriety as this defendant. It may be, as we have already said, that these proceedings conclude the question of partition from afterwards being agitated, a question which it is not now necessary to decide; but we think it clear that they cannot conclude the title even of a party to them, whom the proceedings themselves show had no interest or concern in the question of partition.
*304 Upon the whole, after the best consideration we have been able to bestow upon the case, we think the court erred in excluding the evidence offered to impeach the deed of McCall to Stewart, and that the judgment below should be reversed, and a venire de novo awarded.
Mr. Justice DANIEL and Mr. Justice CAMPBELL dissented.
Mr. Justice CAMPBELL.
The circuit court of Vanderburgh county, Indiana, exercising chancery jurisdiction, in 1842, pronounced a decree, appointing three commissioners to make deeds of conveyance, release, and partition to the plaintiffs in the suit, of certain lots in the town of Lamasco, in that county, and which embrace the land included in this suit, according to an agreement for a partition made by a portion of the plaintiffs and James B. McCall, the ancestor of the lessors of the plaintiff in this cause, and also of a sale and conveyance by him to one Stewart of his undivided interest in the property, and directed that the deeds should convey the fee-simple to the complainants respectively.
The deeds were executed by the commissioners, were reported to the court, and were confirmed by an order.
This decree was rendered in a chancery cause, prosecuted by persons who had held in common the site of the town of Lamasco with McCall, and who had entered into the agreement, by which specified lots were set apart to each of the tenants, and for which mutual conveyances were to be made, and one Stewart, on whose behalf it was alleged that, after the agreement, and before deeds were made, McCall had sold and conveyed to him his entire undivided interest in the tract.
The object of the bill was to perfect in the complainants, according to the agreement of partition and the sale and conveyance to Stewart, their titles. One of the children of McCall was served with process, and two were called in by publication, and a guardian ad litem was appointed for the minors. The prayer of the bill was for the appointment of commissioners to make the conveyances according to the agreement and the sale.
The defendants claiming to hold the lands under these complainants, offered the record of the proceedings in evidence upon the trial in the circuit court, which was opposed, for the reason that the court had no jurisdiction, and for fraud, apparent on the face of the bill, the evidence was admitted as conclusive of the title, and an issue was formed on the bill of exceptions for this court.
The decree operates upon a title to lands within the county *305 and State where the circuit court, that rendered it, was held. That court possesses, under the constitution and laws of Indiana, a general chancery jurisdiction, and a special authority to appoint commissioners to execute decrees like the present. One of the defendants was before the court by process, and was defended by a guardian, and the others by publication, according to the authorized practice of that court. This being the state of the record  the jurisdiction of the court spreading over the subject-matter, and embracing the parties  the inquiry arises, on what principle can its authority be impeached in a collateral proceeding? It is said, that, it being apparent from the bill that James B. McCall had sold his entire interest in the town of Lamasco to Stewart, that Stewart might have completed his agreement for a partition, and that the heirs of McCall, having inherited no estate, were not proper parties to the bill, and that the deeds of conveyance, release, and partition, under the decree, did not conclude their rights. But who is to decide whether they were proper parties to the bill, and whether it was proper to terminate all contest upon the title, by requiring them to release their rights, whatever they might happen to be, to the plaintiffs? Upon whom was the duty devolved by the constitution and laws of Indiana, to determine whether the bill was framed according to the course of chancery practice, and the decree a proper expression of chancery jurisprudence? Certainly not this court, nor the circuit court of the United States for Indiana.
A court of the State of Indiana, with a plenary jurisdiction in chancery, having the subject-matter and parties within that jurisdiction, has pronounced the decree, from whence comes the power of this court to pronounce its jurisdiction usurped, and its decree a nullity? This court, of old, was accustomed to say, "that a judgment or execution irreversible by a superior court, cannot be declared a nullity by any authority of law, if it has been rendered by a court of competent jurisdiction of the parties and the subject-matter, with authority to use the process it has issued; it must remain the only test of the respective rights of the parties to it." And also, "the line which separates error in judgment from the usurpation of power is very definite, and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case it is a record imputing absolute verity; in the other, mere waste paper. 10 Pet. 449.
We have only now to ascertain the extent of the jurisdiction of courts of chancery in the matters of partition, and to quiet title by removing dormant equities, and the effect of decrees in *306 such cases. The first branch of the inquiry is satisfactorily answered by Judge Story. "In all cases of partition," he says, "a court of equity does not act merely in a ministerial character and in obedience to the call of the parties who have a right to the partition, but it founds itself upon its general jurisdiction as a court of equity, and administers its relief ex æquo et bono, according to its own notions of general justice and equity between the parties. It will, therefore, by its decree, adjust all the equitable rights of the parties interested in the estate, and courts of equity, in making these adjustments, will not confine themselves to the mere legal rights of the original tenants in common, but will have regard to the legal and equitable rights of all other parties interested in the estate, which have been derived from any of the original tenants in common."
Such being the enlarged jurisdiction upon the subject-matter, the question arises as to the effect of the decrees upon the titles that are, or might have been, involved in a suit of that nature.
In Reese v. Holmes, 5 Rich. Eq. 531, the court determined that the parties to such a record were concluded by the decree from showing that they had a greater estate than, or one derived from a different source from, that set out in the proceedings and established by the decree.
The court said, "If any relievable fraud or mistake entered into the decree when it was pronounced, the party affected by it might have been heard, if he had come within a reasonable time, with a direct proceeding to set the proceeding aside; but while it stands, it is the standard to which every party taking under it must resort for the measure of his rights, and cannot be set aside or modified collaterally." In Stewart v. Migell, 8 Ind. Eq. 242, the court decide that a bill cannot be supported to set aside a decree formerly made between parties, though it be alleged that the facts found by the court did not exist; and that the decree was conclusive, in respect to the thing which the parties had, or admitted, or it was declared they had, and also in respect to the share to which each was entitled in severalty, and to the parcel so allotted. In Mills v. Witherington, 2 Dev. & B. 433, where land belonging to one in severalty was included in the petition as land held in common, and allotted to another in severalty, it was held, in an action of ejectment, that the lessor of the plaintiff, who had been a party to the judgment, "was concluded, bound, and estopped, to controvert anything contained in it." In Clapp v. Bromagham, 9 Cowen, 537, the court say, "that the judgment in partition, it is true, does not change the possession, but it establishes the title, and in an ejectment must be conclusive." 1 Md. Ch. Dec. 455; 14 Geo. 521; 17 Vesey, 355; 29 Maine, 128.
*307 I do not consider it necessary to inquire, whether the fact of an absolute sale and a perfect conveyance by McCall to Stewart did not relieve the heirs from the duty of completing the agreement of their ancestor; nor do I consider it necessary to inquire whether, having such a sale and conveyance, Stewart had a good case to go into chancery to cut off possible but unpublished equities; nor do I consider it necessary to inquire whether there was sufficient or any evidence to support the decree. Those questions were all subject to the jurisdiction of the circuit court of Vanderburgh county, and might have been revised in the supreme court of Indiana.
Those courts had entire jurisdiction of the parties and the cause, and its decree cannot be collaterally impeached. I am authorized to say that Mr. Justice DANIEL concurs in this opinion.
NOTES
[*] Mr. Justice CURTIS, apprehending that one of his connections was interested in the subject-matter of this case, did not sit therein.