## BIEBER *v.* FECHHEIMER.

---

APPEALABLE ORDERS; INTERLOCUTORY AND FINAL DECREES.

1. Where in a suit by judgment creditors, who were also simple contract creditors at the time of the filing of their bill but who reduced all their claims to judgment subsequently, to set aside an assignment as fraudulent, a decree of the General Term reversing the special term, adjudged that complainants should recover the amount of their judgment against the assignee, and remanded the cause for "further proceedings," and an order of complainant's counsel for the issue of a *fi. fa.* on the decree as entered in the lower court was stayed temporarily by order of that court, but thereafter on the hearing another order was made directing the writ to issue upon application of complainant's counsel, it was *held* that the last order was appealable by the defendant assignee, even though a second application for the *fi. fa.* had not been made.

2. Such a decree is not a final decree even for the amount of complainant's judgment, inasmuch as the "further proceedings"

for which the cause was remanded necessarily imply an accounting of some kind, and therefore an order for the writ of *fi. fa.* upon the decree for the amount of the judgment would be error.

No. 628.  Submitted November 18, 1896.  Decided December 17, 1896.

HEARING on an appeal by a defendant assignee in a suit by creditors from an order directing a writ of *fi. fa.* to issue upon application of complainants.  *Reversed.*

The COURT in its opinion stated the case as follows:

The suit, in which the appeal now before us was taken, was instituted to vacate a deed of assignment made to the appellant, Samuel Bieber, by one Justus Hollander, one of the defendants in the cause.

Hollander was engaged in the clothing business in the city of Washington.   On June 15, 1886, apparently finding himself in embarrassed circumstances, he conveyed to Bieber his property, consisting of his stock in trade, fixtures in his store, and book accounts, aggregating $18,068.33, in trust to pay his creditors, of whom sixty-eight were enumerated with preferences in the order of their enumeration, whose aggregate claims amounted to $14,744.71, exclusive of interest, which varied in the different cases from six to ten per centum per annum, and which made the sum total of the preferred debts about $20,000.   There was a provision in the deed that if, after the payment of proper charges and expenses, there should be any surplus, after the satisfaction of the preferred debts, such surplus should be applied to the payment of all other claims against the assignor in full or rateably, according to the sufficiency or insufficiency of such surplus.   And if there was still a surplus after the payment in full of all claims, such surplus should revert to the assignor.

Bieber accepted the assignment and entered upon the performance of his trust.   Under date of June 25, 1886, he made a report to the creditors, showing an aggregate indebtedness

on the part of Hollander amounting to $39,020.93, of which the preferred debts, without the interest, constituted the sum of $14,744.71, and assets amounting to $18,157.33. It became apparent that the preferred debts would exhaust the assets.

The appellees, Fechheimer and others, constituting a firm doing business in New York under the firm name of Fechheimer, Goodkind and Company, were creditors of Hollander, but were not in the list of preferred creditors. On July 9, 1896, they obtained judgment at common law against him in the Supreme Court of the District of Columbia on a promissory note for $1,000, with interest at seven per centum from February 15, 1886. They also held another promissory note of his for $1,000 given by him on the same day, February 15, 1886, payable in four months after date, with interest at seven per centum, which had not been reduced to judgment at the time of the institution of the present suit. And they also held against him an open account to the amount of $1,864.50, as of the date of April, 1886. All these claims were for goods sold and delivered by the firm to Hollander.

In this condition of things, Fechheimer, Goodkind and Company filed the present suit in equity, wherein they attacked the good faith and validity of the deed of assignment to Bieber, and also contested several of the preferred claims.

Answers were filed by the defendants, and testimony was taken by the complainants in support of their bill. The cause coming on to be heard on the bill, answers and this testimony, the bill was dismissed by the Supreme Court of the District of Columbia in special term on October 15, 1890. Appeal was thereupon taken to the General Term of that court, no supersedeas apparently having been given and none being required. The General Term, on April 22, 1892, reversed the decree of the special term, and rendered

a decree, which forms the main subject of the controversy now before us, and which is in the following terms:

"This cause coming on to be heard on appeal from the special term, and having been heard and considered, it is, by the court, this 22d day of April, A. D. 1892, ordered, adjudged and decreed, that the decree of the court in special term be reversed; and it is further ordered, adjudged and decreed that the deed of assignment made by the defendant Hollander to the defendant Samuel Bieber, described in the proceedings, be, and it is hereby, declared to be fraudulent and void as against the complainants, and that said complainants do have and recover from the said defendant Bieber, the amount of their judgment set out in their bill of complaint, together with their costs in this cause, to be taxed by the clerk; and it is ordered that this cause be remanded to the special term for further proceedings."

From this decree the defendants in the suit appealed to the Supreme Court of the United States. But that tribunal, holding that the decree, if it was a final decree at all, which it seemed to doubt, was only final for the sum of $1,000, dismissed the appeal on the ground of the want of jurisdiction. 162 U. S. 326.

The cause then went back to the Supreme Court of the District of Columbia, by the General Term of which it was remitted to the special term for the "further proceedings" contemplated by the decree. The only further proceedings that took place would seem to have been those that are indicated in the record now before us, namely, the issue of a writ of *fieri facias* by order of the counsel for the complainants to enforce the payment of the $1,000 adjudged by the decree to be due; an order of the court, made upon application of the defendants, to stay temporarily the issue of this writ, and requiring the complainants to show cause why it should issue; and, at the hearing of the matter, a further order directing the writ to issue, upon the application of the

counsel for the complainants. And it is from this last order that the present appeal has been prosecuted by the defendant Bieber.

*Mr. A. S. Worthington* and *Mr. Leon Tobriner* for the appellant.

*Mr. James Francis Smith* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. It was suggested in argument on behalf of the appellees, although not very strenuously insisted on, that the order appealed from is an interlocutory, and not a final, order, and therefore not appealable. We cannot so regard it. It may be that to some extent the point is well taken, inasmuch as the order is not a peremptory order for the issue of the writ of *fieri facias*, but merely directing it to be issued in the event that the complainants should apply for it. But as the complainants had already applied for it, and had directed the writ to be issued, and as it may be presumed even that it was outstanding when the order was made, and had only been held up temporarily, this objection cannot be regarded as substantial. Nor can it be regarded as substantial that ordinarily an order for the issue of a writ of *fieri facias*, whether issued by direction of a party claiming to be entitled to it, or by direct order of the court, is not an appealable order, inasmuch as such an order is one of course in the execution of a judgment or decree; and the appeal, if proper, should have been taken from the judgment or decree, and not from the order enforcing it. But this implies that the judgment or decree sought to be enforced is a final judgment or decree, from which an appeal might lie, and which it would be proper to enforce by a writ of execution. If a judgment or decree is merely interlocutory, not a proper subject for appeal, and not proper to be enforced by a writ of execution, it is difficult to see why the actual issue of a writ of execution thereon should not be regarded as a final-

ity upon which the exercise of the appellate power could be invoked. If, upon examination under the appeal, the judgment or decree whereon the execution was issued, should be found to be a final judgment or decree, the propriety of the issue of the writ of execution would no longer be matter for controversy. But if such judgment or decree should be made to appear as merely interlocutory, it is plain that in no other way could the appellate power be invoked than by appeal from the order for the issue of a writ of execution. Certainly it would not be competent for parties to evade or prevent the exercise of the right of appeal by regarding and treating that as final which is merely interlocutory. If the judgment or decree sought to be enforced in this case was in fact and in law only an interlocutory proceeding, there was no opportunity for an appeal until it was sought to enforce it as a final adjudication; and if there was no right of appeal when it was sought to enforce it, there was no right of appeal at all in the case. This is a conclusion which is inadmissible.

2. The question recurs, therefore—and it is the only question in the case—whether the decree of the Supreme Court of the District of Columbia in General Term in this cause, so far as it adjudged that the complainants should have and recover from the defendant Bieber the amount of their judgment (of $1,000 against Hollander), was a final decree which might be enforced by execution independently of the other provisions of the decree.

It is very clear to us that the Supreme Court of the United States, when the case was before that tribunal, did not regard this decree as a final decree in the sense now claimed for it. That court, in its opinion, said: "If the decree appealed from be a final decree at all, it is final only for the amount of the judgment. If it be regarded as a decree for the whole amount of the plaintiff's claim against Hollander, then it is clearly not a final decree, since the case was remanded for further proceedings, and until

such proceedings were had, the amount of such indebtedness could not be fixed in such manner as to give this court jurisdiction of an appeal, and was purely conjectural upon the court finding that amount to be due. *Union Mutual Life Insurance Co.* v. *Kirchoff*, 160 U. S. 374. This conclusion is not the less irresistible from the fact that the note and open account were reduced to judgment after the bill was filed, since this judgment was not made the basis of the bill, and the *finding* in the decree is restricted to the amount of the first judgment of $1,000."

And with reference to the "further proceedings" directed by the decree, the Supreme Court said: "It is true that it also decreed the assignment to be void and remanded the cause for further proceedings, that upon such further proceedings the court might direct an account to be taken and the property to be divided generally among the creditors, and that upon such accounting the plaintiffs might be admitted to prove the full amount of their claim."

It is argued now on behalf of the appellees that, in making this latter statement in reference to the scope of the "further proceedings" to be had in pursuance of the decree, the Supreme Court was under a misapprehension as to the character of the suit and the purpose of the decree. It is claimed that this is not a creditor's suit for a general accounting, wherein other creditors could intervene and participate, but merely a suit brought by the appellees for their own benefit, and founded upon a judgment at law procured by them. But we think that this claim is itself a misapprehension.

The suit, it is true, is not a creditor's suit in the strict technical sense of those terms, which have reference only to the estates of deceased persons, but what is known in the text books as a quasi-creditor's bill, a suit to enforce a judgment at law by reaching equitable assets through the removal of obstacles against such enforcement in the ordinary way. But other creditors may intervene in such suits, and

become parties to them; and in many such cases an accounting would be both proper and necessary. And certainly we may presume that the appellees will not contest the accuracy of the statement of the Supreme Court, when it says, that "upon such accounting the plaintiffs might be admitted to prove the full amount of their claim."

The "further proceedings" for which the cause was remanded, must necessarily mean either an accounting for the purpose of the division of the property of the debtor between creditors; or an accounting to enable the complainants, or any other parties that might be entitled thereafter to intervene, to prove their full claims; or an accounting to require the assignee to make disclosure of the property in his hands and to show what disposition of it, if any, he had made. Unless the words mean some one or all of these things, they are wholly meaningless. For it would be absurd to suppose that the cause was remanded for the purpose merely of having execution awarded upon the decree, when execution might equally well have been awarded in the decree itself.

Now, if the "further proceedings," for which the cause was remanded, necessarily imply an accounting of some kind, it is clear that the decree was not absolutely final even for the sum of one thousand dollars. A liability may be adjudged even for a specific amount, and yet it does not necessarily follow that the adjudication thereon is such a final adjudication of the cause as would authorize either an appeal or a writ of execution. And this is true both at common law and in equity. For instance, a judgment by default at common law fixes liability, but it is not a finality. And to the same effect is the decree *pro confesso* in equity. And yet no writ of execution could be issued upon either. Similarly, in all cases in equity involving an accounting it is necessary that a complainant should show himself entitled to an accounting; and this he generally does by proving his claim and thereby fixing liability upon the defendant. But it does not necessarily follow therefrom that he will be finally

adjudged in the cause to be entitled to recover the amount of his claim from the defendant. The defendant who is required to account is usually a trustee, a receiver, an executor or administrator, or, as in the present case, an assignee; and, while a principal debtor may be liable for a claim in its entirety, such a defendant, when brought to an accounting, usually can only be held liable to the extent of the assets of the principal debtor that have come into his hands, or that should have so come. This is no more than an elementary principle of equity jurisprudence.

Now, the decree under consideration here is quite peculiar in adjudging that the complainants should recover absolutely from the assignee Bieber the sum of $1,000, for which they had obtained judgment against the principal debtor Hollander; and this, too, apparently without any accounting whatever on the part of Bieber, so far as the record before us discloses. It is true that there is in the record what purports to be an account or report rendered to the creditors by the assignee on June 25, 1886, more than a month before the bill in this case was filed, in which assets were shown in the hands of the assignee to the amount of upwards of $18,000. But the same account shows a total indebtedness of the insolvent debtor amounting to upwards of $39,000. But it certainly does not follow that because the assignee has in his hands assets amply sufficient to pay the claim or claims of the complainants, if there were no other claims, all the other creditors, preferred and unpreferred, are summarily to be cut out in favor of the complainants, because as to these the assignment was fraudulent and void. Such fraud upon the part of the insolvent does not affect the claims of other creditors, unless they have participated in it; and it would be most iniquitous so to hold. And if the assignee has in good faith paid out the assets in his hands to the *bona fide* creditors whose claims were notified to him, it is not apparent how he can justly be held liable to the complainants.

It is very clear to us, therefore, that the liability here

decreed against the assignee Bieber is conditioned upon his being found in a proper accounting to have assets of the debtor in his hands applicable to the claim of the complainants; and that such an accounting was intended to be included in the " further proceedings " that were directed by the decree to be had. Were it otherwise, and were the decree to be taken as a personal decree against Bieber for the sum of $1,000, we would be compelled to hold the decree to that extent as void. For Bieber was sued only as the assignee of Hollander; and there was no jurisdiction in the court to render a personal decree against him, regardless of the fact whether he had, or should have had, assets of the debtor in his hands. Only to the extent of assets of Hollander in his hands applicable to the claim of the complainants can Bieber be properly held liable; and the extent of those assets can only be ascertained by an accounting or by the admission of the parties.

There is also another consideration which we cannot overlook. If we were to regard the decree in question as a final adjudication upon which execution could properly be issued, it could only be upon the theory that all the matters in controversy in the suit, other than the claim upon the judgment for $1,000, had been rejected by the court. *McCall v. Carpenter*, 18 How. 297; *Washington, &c., Steam Packet Co. v. Sickles*, 5 Wall. 580; *Cromwell v. Sac County*, 94 U. S. 351; *Nesbitt v. Riverside Independent District*, 144 U. S. 610; *Wilmington & W. R. Co. v. Alsbrook*, 146 U. S. 279; *Dowell v. Applegate*, 152 U. S. 327. For all the claims of the complainants were set forth and directly involved in this suit; and if the decree found no more than one of them to be tenable, and made its determination of that one a final adjudication of the case, then it must have rejected the other claims. But plainly this was not the purpose or scope of the decree. The Supreme Court has held that such was not the purpose or scope of the decree; and a different theory would not be for the interest of the complainants.

We are of opinion, therefore, that the decree of the Supreme Court of the District of Columbia in General Term, which is in controversy here, was not a final decree in the sense that a writ of execution can be issued upon it. It contemplated an accounting by the assignee and proof by the complainants of their other claims, now it seems all reduced to judgment, and thereupon a final decree adjudicating the rights of the parties. Being of this opinion, we think that it was error to issue the writ of execution that was issued in the cause, and that the order for the issue of such writ was unathorized by law. That order, therefore, must be reversed, with costs ; and the writ, if issued, should be recalled or vacated.

*The cause will be remanded to the Supreme Court of the District of Columbia, with direction to vacate the order appealed from, and for further proceedings not inconsistent with this opinion.   And it is so ordered.*