EASTERN BUILDING & LOAN ASS'N OF SYRACUSE, N. Y., v. WELLING et al.

(Circuit Court, D. South Carolina. May 21, 1902.)

1. RES JUDICATA—MATTERS CONCLUDED BY JUDGMENT—IDENTITY OF ISSUES.

A mortgagor brought an action against the mortgagee in a state court of South Carolina to recover the penalty provided by statute for the failure of defendant to discharge the mortgage of record, alleging that it had been fully paid and satisfied. Defendant answered, and after trial a judgment was rendered for plaintiff, which was affirmed by the supreme court of the state. Held, that such judgment was a bar to a subsequent suit by the mortgagee in a federal court to foreclose the mortgage, which involved as the foundation for the granting of the relief demanded a determination by that court that the mortgage was a

subsisting obligation, which was the very issue submitted to, and adversely determined by, the state court.

**2. SAME—MATTERS NOT DETERMINED—FAILURE TO PLEAD EQUITABLE DEFENSE IN ACTION AT LAW.**
   Neither could the federal court entertain the suit on allegations in the bill that through mistake the mortgage did not express the true contract of the parties, and a prayer for its reformation, since, under the provisions of the Code of South Carolina, such matters might have been pleaded as an equitable defense in the state court, and, if sustained by the proofs, that court could have granted affirmative relief thereon, which would have effectually defeated the plaintiff's recovery, and under the construction placed on such provisions by the supreme court of the state a judgment at law is conclusive upon all matters, legal or equitable, which might have been pleaded in defense, and which if so pleaded would have gone to the merits of plaintiff's case.

In Equity. On plea of res judicata.

Russell & Winslow and Mordecai & Gadsden, for complainant.
Mitchell & Smith, for defendants.

SIMONTON, Circuit Judge. The facts of this case are fully set out in the opinion of this court filed 25th July, 1900. 103 Fed. 352. When that opinion was filed a writ of error was pending to a judgment of the supreme court of South Carolina in a cause of Welling and Bonnoitt against the Eastern Building & Loan Association of Syracuse, N. Y. This judgment had been pleaded in bar of the relief asked in the bill as res judicata. The court was of the opinion that the judgment could not be pleaded as res judicata so long as the decision of the supreme court had not been had on the writ of error. It now appears that the writ of error has been dismissed by the supreme court upon the ground that no federal question was involved in the case. So the judgment of the supreme court of South Carolina is final. The defendants have now filed a plea in bar supplemental to the former, setting forth the action of the supreme court so sustaining their plea of res judicata. This is the question in this case.

Rev. St. S. C. 1893, § 1895, provides that any mortgagor who has paid in full his mortgage may tender to the mortgagee the fees for entering satisfaction thereon, and thereupon demand that satisfaction be so entered; that any mortgagee, after such payment and tender, who shall not repair to the office of record within three months thereafter and enter satisfaction as demanded, shall forfeit and pay to the party aggrieved a sum of money not exceeding one-half of the amount of the debt secured by such mortgage, to be recovered in any court of competent jurisdiction. Welling and Bonnoitt had made application to the Eastern Building & Loan Association of Syracuse, N. Y., for 50 shares of its capital stock. Their application had been granted and the certificates issued to them, making them stockholders, expressly subject to all the rules and by-laws of the corporation. Subsequently they made application for a loan of $5,000 under the rules and by-laws of the association. This application was granted and the loan made, they receiving in cash $4,500. Before completing the loan Welling and Bonnoitt executed 78 notes, payable from month to month, and

¶ 2. See Judgment, vol. 30, Cent. Dig. §§ 1132, 1241.

extending over a period of 78 months from the date of the mortgage; 75 of them being for $79.20 each, and the last 3 in the order of payment being for $41.70 each, they being in the aggregate $6,177.60. Contemporaneously with these notes they also executed a mortgage of a tract of land in Darlington county, S. C. This mortgage, after the granting part, states as follows:

"This grant is intended as a security for the payment of the sum of sixty-one hundred seventy-seven and 60/100 dollars, the same being the principal, interest, and premium of a loan from said association, which said loan was made pursuant to and accepted under the provisions of the by-laws of said association, and which said by-laws have been read by the mortgagors, and are hereby made a part of this contract, which said loan is evidenced and secured to be paid by seventy-eight (78) certain promissory notes of even date herewith, executed by the said Lawrence S. Welling and Marion Bonnoitt, payable to the said association, at its office in Syracuse, as follows: One of each of said notes is to be paid on or before the last Saturday of each and every month until all of the seventy-eight notes are fully paid, together with interest on each of said notes after maturity at the rate of six (6) per cent. per annum, payable semiannually until said notes are fully paid."

Then follow the covenants:

"And the said mortgagors, for themselves, and their heirs, executors, administrators, and assigns, hereby covenant and agree with the party of the second part, its successors and assigns, to pay said principal, interest, and premiums at maturity, and the interest accruing on said notes after maturity, and all fines and penalties that may be imposed pursuant to the provisions of the constitution and by-laws of said association, and also keep and perform all promises and engagements made and entered into with said association according to the true intent and meaning of its by-laws and articles of association."

—With the usual insurance clause. Then the default clause in these words:

"And it is hereby expressly agreed, by and between the parties to these presents, that if default be made in the payment of any one of said notes, or any part thereof, as herein provided, or in case of waste, or nonpayment of taxes, assessments, or impositions on said premises, or in case of neglect or refusal to keep the premises insured, as herein provided, or in case the improvements thereon shall not be kept in good order or repair, or in case of a breach of any of the covenants or agreements contained herein, or in case of a failure to duly observe and keep the by-laws of the said association, and in either or any of such cases, the whole of the said principal sum, interest, premiums, fines, dues, and costs, shall at once become due and payable, at the option of said association, its successors or assigns; and it shall be lawful for said association, or its successors or assigns, at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law, and out of all moneys arising from such sale to retain the amount due and unpaid for principal, interest, premiums, fines, dues, and costs thereof, taxes, assessments, impositions, insurance, and other advances, together with the costs and charges of making such sale, and the overplus, if any there be, shall be paid by the party making such sale, on demand, to the said Lawrence S. Welling and Marion Bonnoitt, or their heirs or assigns. And this conveyance shall be void if full payment of the aforesaid moneys, both principal and interest, be made as hereinbefore specified, and if the aforesaid covenants, and each of them, be well and truly kept and performed, as herein specified and provided."

The mortgagors paid all of the notes but the last. When that became due they tendered the full sum of it, and the costs of entry of

satisfaction, and demanded thereupon that satisfaction be entered. These tenders were refused. Thereupon Welling and Bonnoitt, three months thereafter, brought their action in the court of common pleas for Darlington county, S. C., against their mortgagee for the penalty provided in the act. The building and loan association, having been served with summons, entered its appearance and filed its answer to the suit. Its defense was that this advance or loan was effected to the plaintiffs as stockholders in a mutual association; that it was governed wholly by the by-laws of the association and the terms of its charter, all of which entered into and were a part of the contract; that the mortgage did not secure merely the notes therein specified, but that it was an indemnity and security to the association for the performance by the borrowing stockholder of all his obligations to the association, and that among these was an obligation to pay his dues, as provided by the by-laws, until the stock of the association had reached par; that although the notes of the plaintiffs had been paid in full, yet the stock of the association had not reached par, and so the obligation of the borrowing·stockholder, secured by this mortgage, had not been released and satisfied. So the issue was drawn. Was this mortgage satisfied? If it was, defendants must pay the penalty. If not, the complaint must be dismissed. The cause was tried before a judge with a jury. The defendant put in evidence its charter, by-laws, application for the stock, certificates of stock, application for the loan, grant of the loan, and all papers connected therewith, to sustain its contention that the mortgage was not satisfied. The case went to the jury under the charge of the judge, and a verdict was found for plaintiffs, and judgment entered accordingly. On appeal by the association this judgment was affirmed by the court of last resort. This judgment was that upon the pleadings and the evidence the mortgage was satisfied, and as its result such satisfaction should be entered on the record.

Meanwhile the Eastern Building & Loan Association of New York, pending the writ of error from the supreme court of the United States, filed its bill of complaint in this court against Welling and Bonnoitt, the same parties who were plaintiffs in the action at law in the state court. This bill sought the foreclosure of the mortgage, the subject-matter of the suit in the state court. It set forth in elaborate detail the facts connected with the application for subscription by the defendants to the capital stock of the complainant association, the granting of this application, the issue of the certificates of stock, upon each of which was printed the by-laws of the association as part of the contract of subscription, the application by defendants of the loan in advance, all made subject to the by-laws of the association, the granting of the loan, the execution of the 78 notes, and the execution and delivery of the mortgage. The bill avers that this mortgage, construed in connection with the charter and by-laws of the association, the declarations of the defendants in applying for the stock, and subsequently for the loan thereon, and under the decisions of the courts of New York, the lex loci contractus, was intended not only to secure the sum of money advanced, but also the full performance by the borrowing stockholders of all their contracts of subscription and loan with the associa-

tion. Referring to the suit in the state courts and the judgment thereon, the bill charges that both the said court of common pleas and the said supreme court based their decisions, opinions, and judgments in said action between said respondents and the complainant, as defendant, upon the sole ground that the only matter before said courts for determination was the construction of the mortgage indenture hereinbefore set forth and exhibited, and the effect upon said mortgage indenture of the payment and discharge of the 78 notes in said mortgage indenture mentioned, and by said indenture secured; but the meaning, construction, and effect of said notes, and of the contract between the respondents and the complainant, was not considered, adjudicated, or determined, either by said court of common pleas or by said supreme court of South Carolina, nor were the debts and obligations of respondents as stockholders in and members of complainant corporation adjudicated or determined. And complainant alleges that since the institution of said action, and since the judgment therein, large sums have accrued and become due and owing, and are now due and unpaid, from the respondents to complainant, by way of premium and interest on the advance aforesaid, and by way of dues, calls, and fines on the stock and stock subscription of respondents aforesaid. And, further, the bill states that the fixing of a definite time, as appears in the number of the notes for the ending of this contract, was not authorized by the charter, was an unlawful act of the officers of the corporation, and ultra vires of the corporation itself. This is its allegation:

"That by the mistake and inadvertence of the parties complainant and respondents, and by the mistake and inadvertence of counsel of complainant, and of the officers and board of directors of complainant, the mortgage indenture hereinbefore recited and exhibited was made and executed by respondents in manner and form as hereinbefore set forth, but not in full compliance with the contract obligations between the respondents and the complainant, and the articles of incorporation and by-laws of the complainant, and by such inadvertence and mistake said mortgage, as finally executed and delivered by the respondents to the complainant, does not fully and correctly show the contract or agreement between the respondents and the complainant in the respects above stated, and is not in full compliance with the agreements and understandings of the parties and the contract between them, and as to this complainant asks that said mortgage be construed in accordance with the real contract and understanding between the parties, as hereinbefore set forth, and in accordance with the articles of incorporation and by-laws of the complainant, and the laws of the state of New York, and that any defects in or omissions from said mortgage may be remedied, and said mortgage be made to conform to the real agreement of the parties in the premises, and that specific performance of the obligation of the respondents as to the terms and conditions of said mortgage may be by this honorable court ordered and decreed, and that respondents may be required to now execute and deliver to complainant, if the court shall deem that the equities between the parties so require, and that it is necessary to the relief to which the complainant is entitled upon the facts aforesaid, a mortgage in lieu of the mortgage hereinbefore set forth and exhibited, such new mortgage to be in strict accordance with the contract obligations of the respondents to the complainant, and in reformation of the mortgage executed as aforesaid, if such reformation be deemed necessary."

The prayer of the bill is that said mortgage indenture described and exhibited in the bill be reformed, and the errors, omissions, and mistakes therein corrected, so that the same shall express the true mean-

ing and intent of the parties, and that the decree of foreclosure hereinafter prayed be entered in accordance with the true meaning and intent of the parties, and of the articles of incorporation and by-laws of complainant.

To this bill the defendants filed the plea of res judicata, and afterward a supplemental plea of the same nature, reciting the action of the supreme court of the United States. Can this plea be sustained?

The law in respect to estoppel by judgment is well settled. The only difficulty lies in the application of the facts to the law. City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 397, 17 Sup. Ct. 905, 42 L. Ed. 202.

In Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204, Mr. Justice Field says:

"The judgment is not only conclusive as to what was actually determined respecting such demand, but as to every matter which might have been brought forward and determined respecting it."

This is elucidated still farther in McCall v. Carpenter, 18 How. 297, 15 L. Ed. 389:

"A judgment is conclusive only upon a matter within the issue necessarily involved in the decision."

In City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 397, 17 Sup. Ct. 913, 42 L. Ed. 202, it is said:

"When the judgment pleaded was on the same cause of action between the same parties or their privies, the first judgment is an absolute bar, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. When the second action is between the same parties, but upon a different claim or demand, the judgment in the former action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict is rendered. Cromwell v. Sac Co., 94 U. S. 351, 24 L. Ed. 195."

In City of Aurora v. West, 7 Wall. 82, 19 L. Ed. 42:

"When the parties are the same, the legal effect of the former judgment as a bar is not impaired, because the subject-matter of the second suit is different, provided the second suit involves the same title and depends upon the same questions."

In Werlein v. City of New Orleans, 177 U. S. 397, 20 Sup. Ct. 685, 44 L. Ed. 817, quoting and approving City of New Orleans v. Citizens' Bank of Louisiana, supra, the court says:

"The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but it exists even although there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the same parties and their privies."

In the case before us, the parties to the former action and to this action are precisely the same. The controlling question in the former action was whether the mortgage had been satisfied, the defendant in that action holding that it was not satisfied. The plaintiff could not possibly recover unless it was satisfied. The present bill proceeds upon the idea that the mortgage has not been satisfied. This is the

crucial question in the case. It cannot recover if the mortgage was satisfied. So in both cases the controversy was and is the same. Was this controversy decided in the law case under identical circumstances and conditions as now surround it? In the law case the building and loan association introduced in evidence its charter, by-laws, certificates of stock, contracts on the subscription and loan, all of these to sustain the position that the mortgage was not satisfied. In this bill it sets up the same matter for the same purpose, with a further ground that, if the mortgage is satisfied by the payment of the notes, that instrument was executed, delivered, and accepted under a mistake, was prepared under unlawful action of the officers of the corporation, and was ultra vires. Was this admissible matter which might have been offered in the suit at law, for the purpose of upholding the position of the building and loan association? In other words, could the Eastern Building & Loan Association of Syracuse, N. Y., in the law case in the state court, under the pleading and practice of that court, so frame its defense as to ask for a reformation of the mortgage, so that it could comply with the requisites of the charter, by-laws, contracts, and decisions in evidence; and, when so reformed, could the refusal to satisfy the mortgage be sustained? If this could have been done, and was not done, then the Eastern Building & Loan Association is estopped by the former judgment. The answer to this question is found, and can only be found, in the practice and procedure of the courts of South Carolina.

During the reconstruction period in South Carolina the legislature adopted the New York Code. It was adopted in ipsissimis verbis. It was a complete change from the system of pleading and practice theretofore prevailing, and in many respects was unsuited to the character and traditions of the people of the state. Gradually it was amended from time to time by the legislature and by judicial decisions, so that now the civil procedure in South Carolina has peculiarities of its own. One of the earliest cases under the Code (Barber v. McAliley, 4 S. C. 45) established this rule:

"The proper practice, when a defendant has rights upon grounds that formerly authorized the filing of a bill to restrain an action at law, which he desires to oppose to a recovery in an action against him, is to interpose such rights by way of answer or counterclaim. He may in this way not only take advantage of them by way of defeating the plaintiff's judgment, but may seek and obtain affirmative relief appropriate to the case thus made by him."

In Rice v. Mahaffey, 9 S. C. 281:

"A defendant in an action must plead all his defenses, whether legal or equitable. He, cannot allow judgment to be entered against him, and then commence a separate action against plaintiff, alleging an equitable defense and praying an injunction. The judgment estops him from setting up any matter which could have been pleaded in the first action."

In Sale v. Meggett, 25 S. C. 81, this system is applauded. In Beattie v. Latimer, 42 S. C. 319, 20 S. E. 53, and Phillips v. Anthony, 47 S. C. 460, 25 S. E. 294, it was decided that one defendant could obtain relief against a codefendant simply by so framing his answer as to ask affirmative relief. Nor is the practice in South Carolina anomalous.

In Hoppough v. Struble, 60 N. Y. 430, it is held that in an action of ejectment defendant can set up as a defense that the land in question was intended to be conveyed to him by a deed from plaintiff, but by a mistake in the description it was not included. There are cases in which it is held that a defendant who could have set up a counterclaim by way of defense, and concludes not to do so, is not precluded from bringing an action on the subject-matter of the counterclaim. But the defense here was not a counterclaim. A counterclaim is somewhat in the nature of a plea of confession and avoidance. It proceeds on the idea that if the demand of the plaintiff can be sustained, or whether it be sustained or not, the defendant himself has a good claim against the plaintiff, which can be offset against that of the plaintiff if plaintiff be sustained, or, if plaintiff fail to prove his case, will entitle the defendant to a judgment against him for the sum demanded in the counterclaim. It is, as it were, aside of the claim of plaintiff, and it can be sustained whether the demand of the plaintiff be or be not sustained. But in the case at bar the defense in the state court and the relief sought in this court goes to the very root of the case made by Welling and Bonnoitt. Talbott v. Padgett, 30 S. C. 171, 8 S. E. 845. If this present complainant is right, then Welling and Bonnoitt had not a shadow of a right to the relief they asked. It is impossible for the case of Welling and Bonnoitt to stand in any particular, if the position of the Eastern Building & Loan Association be sustained at all. To sum up the matter: In the action in the state court of Welling and Bonnoitt against the Eastern Building & Loan Association of Syracuse, N. Y., the sole question was, was the mortgage satisfied, all its conditions having been fulfilled? In the case at bar the sole question is, is this a valid subsisting mortgage, whose conditions have been broken? In the action in the state court, under the prevailing practice, the defendant could have set up the legal defense that, by its terms and the contracts between the parties, the mortgage was not satisfied, or, if there were a mistake in the draft of the mortgage, he could set up in the same answer his equitable defense, and have prayed a correction of the mistake and a reformation of the deed. On proper proof, this affirmative relief could have been allowed him.

This being the case, the judgment in the state court is res judicata.