## THE BREMENA v. CARD.

*(District Court, D. South Carolina. February 25, 1889.)*

ADMIRALTY—PRACTICE—ATTACHMENT.

The forty-seventh rule in admiralty abolishes imprisonment for debt on admiralty process in all cases where by the law of the state where the court is held imprisonment for debt has been abolished in similar cases. Rule 2 provides that in admiralty suits *in personam* the mesne process may be by a simple warrant of arrest of the defendant in the nature of a *capias*, or with a clause therein "that, if he cannot be found," to attach his goods. *Held*, that this clause does not mean "found for the purpose of arrest," so as to justify an attachment in a case where defendant is actually within, and a resident of, the district, but cannot be arrested because of the state law.

In Admiralty. Question reserved.

*Barker, Gilliland & Fitz Simons*, for libelant.

*I. N. Nathans*, for respondent.

SIMONTON, J. In this case a monition with warrant of arrest was issued, with this qualification: "In conformity with rule 2 of the supreme court in admiralty." Afterwards, it appearing that the respondent was within this jurisdiction, and had been served with the monition, and was actually present in court ready to answer, so much of the order as directed his arrest was rescinded, and the question was reserved as follows: "Whether in a case like this, in which the defendant, being within the jurisdiction, and served with process, and under the state law of force in this court, cannot be held in arrest, or made to give bail, it can properly be said that 'he cannot be found' for the purposes of arrest and therefore an attachment can issue against his goods." Counsel have been heard on this question so reserved. There can be no doubt that the warrant of arrest was rightfully rescinded. The forty-seventh rule in admiralty abolishes imprisonment for debt on process issuing out of the admiralty court in all cases where by the law of the state where the court is held imprisonment for debt has been, or shall be, abolished upon similar or analogous process issuing out of the state court. A person is imprisoned for debt who is arrested on mesne as well as final process. If arrested on mesne process, he is held in the custody of the court until he gives bail. When released on bail, he remains in the custody of the bail, subject to arrest by the bail, and surrender into the custody of the court, at the option of the bail. He remains in custody, the bail being substituted for the sheriff or marshal. *Stevens* v. *Meeds*, 1 Mill, Const. 318; *Glover* v. *Gomillion*, 2 Rich. Law, 554; Code Civil Proc. S. C. §§ 209, 210. In South Carolina "no person shall be imprisoned for debt except in cases of fraud." Const. art. 1, § 20. The Code of Civil Procedure, § 200, provides for arrest on warrant in six cases. The first four cover cases of fraud *eo nomine*; the fifth provides for the arrest of an absconding debtor though the debt be not yet due; the sixth authorizes arrest in an action for the recovery of damages in a cause of action not aris-

ing out of contract, when the debtor is about to remove from the state, or when the action is for injury to person or character or for the wrongful taking, detaining, or converting property. Imprisonment for debt being thus abolished in all cases but that of fraud, and there being no fraud alleged in this case, the warrant of arrest should not issue.

The question remains, if the person of the respondent cannot be arrested, may his goods be attached, although he himself is within the jurisdiction, at his place of residence or of business, and actually served with process? The object of all process is to bring the defendant into court where he may, if he chooses, be heard in his own behalf, and the issues between him and the party complaining may be finally decided. There are two forms of process,—the monition for suits *in personam*, and the warrant of arrest for suits *in rem.* The latter attaches the impersonal thing, *res,* and is usually accompanied by a monition directed to any one interested,—notice to the world. Ben. Adm. § 434. Where in suits *in personam* the simple monition is issued, it is the duty of the marshal to serve the respondent personally. Id. § 421. But frequently the respondent is a transient person, or the libelant wants some security from him to respond to his demand by payment. The courts of admiralty exercised in these cases the powers similar to those which the courts of law exercised, and ordered the arrest of the respondent, who could release himself by giving bail for appearance, and, after appearing by giving bail, to the action. As we have seen, this practice has ceased in this court under the rule 47 in admiralty, except in cases of fraud or fraudulent practice, and certain other cases stated above. But, in addition to the simple monition, and to the warrant of arrest thereon, there was further process against the defendant, with the same intent and purpose, however, to enforce an appearance and submission to the jurisdiction; that is, by attaching his goods, and, if there be none, his credits. In the form given by Benedict, page 638, the warrant authorizes this attachment as the alternative, "if the defendant cannot be found in your district." And at section 426 he says "it is the duty of the marshal to arrest the party if he can be found in his district, and he has no right to attach goods, etc., before he has endeavored to find the party himself. * * * The marshal should by no means by devoting time to a fruitless search for the defendant lose the opportunity of attaching his property." This process by attachment is of ancient usage in admiralty, and is sanctioned by courts of the highest authority. *Manro* v. *Almeida,* 10 Wheat. 473; *Navigation Co.* v. *Bank,* 6 How. 344; *Miller* v. *U. S.,* 11 Wall. 287; *Bouysson* v. *Miller,* Bee, 186; *McGrath* v. *Candalero,* Id. 64; Ben. Adm. § 431 *et seq; Atkins* v. *Disintegrating Co.,* 18 Wall. 304.

The question is, is this process by attachment an original proceeding issuing out of the court, just as a monition or warrant of arrest issues, or is it an alternative process, to be used as a substitute for the warrant of arrest, in case, and only in case, the defendant be absent, or cannot be found personally to be served? Can it be used when the defendant is present, comes into court, appears, and offers to put in his answer? As we may see by the authorities above quoted, this proceeding by attach-

ment is derived from the civil law. It may be of interest to inquire what was the mode of using it under that law. By the oldest monument of the Roman law—the Twelve Tables—the provision made for a suit is by citing the party. "Go immediately with the person who cites you before the judge." "If the person cited endeavors to escape from you, or puts himself in a position of resistance, you may seize his body." "But if the person cited find a surety, let him go." Coop. Just. app. 1, p. 656, 1st table. In the Institutes, tit. 4, "De in Jus Vocando," we find:

"Paulus, libro 1, Edictum, says: Satis pœnæ subire eum. Si non defendatur et latitet certum est quod mittatur adversarius in possessionem bonorum ejus. Sed si aditum ad se prœstet aut ex publico conspiceatur recte in jus vocari licere." 1 Corp. Jur. Civ. (Ed. Kriegel,) p. 81, § 19.

We thus see that under the Roman law the first step in a suit was to cite the defendant. That if he obeyed the citation well and good. If he resisted or attempted to escape he could be seized, and made to give security. If he concealed himself, his goods could be taken. Evidently, under the civil law, attachment of goods on mesne process was used only as an alternative in case defendant was absent or concealed himself. Judge BEE discussing the right to issue an attachment in the court of admiralty, in *McGrath* v. *Candalero*, Bee, 64, says:

"The object of the attachment is to secure redress out of the property of the party when you cannot get at his person. If he comes in time and gives security his property may be discharged."

What he means by "get at his person" appears from the authority he uses. Clarke, Praxis, which he quotes with approval in *Bouysson* v. *Miller*, Bee, 187, says:

"If he is out of the kingdom, or so absconds that he cannot be arrested, then his goods may be attached."

2 Browne, Civil & Adm. Law, 434, quoted in *Atkins* v. *Disintegrating Co.*, says:

"Let us lastly suppose that a person against whom a warrant has issued cannot be found, or that he lives in a foreign country, here the ancient proceedings of the admiralty court provided an easy and salutary remedy. * * * The goods of the party were attached to compel his appearance."

This was the practice in admiralty when the practice act of 1789 was adopted. *Atkins* v. *Disintegrating Co.*, *supra.* The supreme court, prescribing rules for the admiralty, in rule 2 says: In suits *in personam*, the mesne process may be by a simple warrant of arrest of the person of the defendant in the nature of a *capias*, or by a warrant of arrest of the person of the defendant, with a clause therein, "that if he cannot be found," to attach his goods, etc. Rule 47 authorizes bail to be taken in those cases only in which it is required by the laws of the state where the arrest is made upon similar or analogous process, and, as we have seen, abolishes imprisonment for debt, either on mesne or final process. It is argued with much force that the words of the second rule, "if he cannot be found," mean "if for any reason he cannot be arrested,"—"found for the purpose of arrest." And this view is sustained by Judge LOWELL in *Insurance*

*Co.* v. *Nickerson,* 2 Low. 310. Judge LOWELL bases his decision upon a rule of Judge SPRAGUE, in the district court, which prescribes that, if the defendant cannot be arrested, the attachment may issue. But this either assumes the construction of the second rule to be as is contended for, or it assumes that it is *casus omissus* in the supreme court rules, and therefore the district court rule was made pursuant to rule 46 of the supreme court. It is a sufficient answer to the last supposition that we have no rule in this district like Judge SPRAGUE's rule. There are two objections to the construction of rule 2 contended for. The words "cannot be found" have a technical meaning. When an officer, under the mandate of the court, is instructed to serve process, or a rule, or subpœna, and after due diligence he cannot find the defendant, or in some cases cannot find him, or ascertain his place of residence or business, the return he makes is "*non est inventus,*"—"cannot be found,"—that is to say, cannot be gone to, —met with; and this, when the process may demand personal service, or copy left, as well as the arrest of defendant. Again, attachment of property on mesne process is a severe measure. It sequestrates goods before proof and judgment. Can it be used unless the defendant is in some sort of default, or unless justified by extreme necessity? If a defendant absconds, or conceals himself, thus avoiding process, his goods are taken to force his appearance, and when, thus forced, he appears, he is put on terms, or else he may again abscond. If he is absent from the jurisdiction, and has property within it, the court, favoring its own citizens, and securing them a remedy in their own home, allows his property to be attached so as to enforce his appearance. And as he is a transient person, and may remove his property as well as himself, even after he comes in and appears, he also is put on terms. So with a corporation,—an abstraction,—as it cannot be served or held as a person, its property is attached to enforce appearance, and held or bonded to enforce relief. All of these reasons fail when we come to a demand against a resident, surrounded by his family, having his home and his place of business within the jurisdiction. He is almost within the curtilage. He is in no default. He makes no delay. He presents himself at the call of the court, offers his defense, submits to its jurisdiction. Why should he be amerced of his goods, be compelled to secure a demand not proved, in advance of proof, and be forced to redeem his property? The progress of this age has exempted the person from arrest, if the defendant be innocent of fraud. The exemption may become absolutely useless, may well become oppressive to him, if it be the occasion, the excuse, the reason, for the sequestration of his estate.

There is another view of this subject which seems to have weight. It will be noted that these rules of practice are made by the supreme court under the authority of the act of congress of 8th May, 1792, (1 St. at Large, 276,) and that they have the force of law; that rule 2 makes provision for a warrant of arrest of the person, and is the authority for issuing such a warrant; that it deals with this subject only; and that in so dealing with it, it provides for an attachment in the case of the issuance of a warrant of arrest, and the inability to serve it because the de-

fendant cannot be found. In other words, the attachment calls for its predicate the issuance of the warrant of arrest, and the failure to find the defendant. It may be that the right to issue the attachment depends as much upon the right to issue and the issuance of the warrant of arrest as it depends upon the failure to find the defendant. If this be so, and the warrant of arrest cannot issue, the attachment cannot be used. See *Chiesa* v. *Conover*, 36 Fed. Rep. 334. The motion to rescind the warrant of attachment is granted.