## BAILEY et al. v. SUNDBERG.

### (Circuit Court of Appeals, Second Circuit. January 18, 1892.)

1. ADMIRALTY—LIBEL IN REM—PUBLICATION OF NOTICE—RES ADJUDICATA.

The owner of a vessel which was sunk by collision with a steamer brought a libel *in rem*, and the steamer was attached, but no notice was given or publication made as required by admiralty rule 9. Subsequently the steamer was released on her owner's giving bond to the libelant for less than her value. *Held,* that a decree dismissing the libel was binding on the libelant only, and would not prevent a new libel by the owner of the cargo.

2. SAME—RES ADJUDICATA.

Where, on a libel *in rem* for collision, the master of the libelee, though not a formal party, takes an active part in the defense, a dismissal on the merits renders the question *res judicata,* as against a subsequent libel *in personam* against him.

3. SAME—PRIVITY.

The master of a vessel is not in privity with her owner, within the rule that binds privies as well as parties to the estoppel of a judgment.

4. ADMIRALTY—LACHES.

In the absence of special circumstances a delay of less than six years in bringing a libel *in personam* for collision will not be considered as laches, since courts of admiralty govern themselves by the analogies of common-law limitations.

44 Fed. Rep. 807, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Admiralty. Libel *in personam* for a collision, brought by George Bailey and others against John P. Sundberg, as master of the steam-ship Newport. The libel was dismissed in the district court, (see 43 Fed. Rep. 81 and 44 Fed. Rep. 809,) which decision was affirmed in the circuit court. Libelants appeal. Reversed.

George A. Black, for appellants.

Wm. W. Goodrich and Robert D. Benedict, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree dismissing a libel *in personam* for collision. The questions presented arise upon the pleadings, and are: (1) Whether a decree in a former suit is *res adjudicata* in the present suit; and (2) whether the claim of the libelants is stale.

The suit is brought by the owners of the schooner Shaw, and the owner by subrogation of her cargo, against Sundberg, to recover their losses sustained in a collision between the Shaw and the steam-ship Newport, of which steam-ship Sundberg was master at the time of the collision. The collision took place February 23, 1884. The Shaw was sunk, her cargo became a total loss, and all the persons on board of her were drowned. April 23, 1884, the owners of the Shaw filed a libel *in rem* in the United States district court for the southern district of New York against the steam-ship to recover the value of the schooner, her freight money, and the personal effects of her master and crew. Process was issued on that day, in the usual form, to the marshal of the court, requiring him to attach the steam-ship, and to give due notice to all persons having anything to say, why she should not be condemned and

sold, to appear in the district court on the 13th day of May then next, and interpose their claims and make their allegations. The process was executed by the marshal only so far as to attach the steam-ship. He did not publish or otherwise give any notice, and there was no proclamation or default on the return-day. Prior to the return-day of the process the owner of the steam-ship appeared and filed an answer. No other person appeared. Upon the owner giving bond with surety in the sum of $24,000, an order was made by the court, with the consent of the proctor for the libelants, discharging the steam-ship from custody. There was no appraisal of the steam-ship, and her value was more than $50,000. Proofs were subsequently taken in the cause, and after hearing the parties the court made a decree dismissing the libel, and adjudging that the steam-ship never struck or sunk the Shaw. When the libel was filed Sundberg was no longer master of the steam-ship. He was not named in any way as a party to the cause. He took an active part, however, in the defense of the suit, besides being examined as a witness. The decree dismissing the libel was entered on the 9th day of October, 1886. Subsequently the libelants appealed from that decree to the circuit court; and on October 15, 1888, a decree was made by the circuit court affirming the judgment of the district court. The libel in the present cause was filed on the 5th of February, 1890. It alleged the collision between the two vessels, and that it was caused wholly by the negligence of those navigating the steam-ship. Sundberg, by his answer, interposed as a defense the adjudication in the former suit. Thereupon an amended libel was filed, admitting the former adjudication, and setting up facts in avoidance. Sundberg filed exceptions to the amended libel.

Upon the facts stated we are of the opinion that the decree in the first suit is not an estoppel as to the owner of the cargo. If due service of process had been made, pursuant to admiralty rule 9 of the supreme court, and a default been entered against all parties not appearing at the return-day, doubtless the owner of the cargo of the Shaw, as well as all other persons having any interest in the steam-ship Newport, would have been parties to the suit, and would have been concluded by the decree from litigating again any issue which was necessarily involved in the decision. The privilege or right of one who has sustained loss by a collision against the guilty vessel is inchoate from the moment of collision, although process *in rem* is essential to enforce it; and it is not displaced by a sale of the vessel to a *bona fide* purchaser without notice, or by the death of the owner, or by bankruptcy. It is more than a right to sue. It is a right in the thing itself, constituting an incumbrance upon the property, and existing independent of the process used to enforce it. *The Young Mechanic*, 2 Curt. 404; *Vandewater* v. *Mills*, 19 How. 82.

A suit *in rem* is, in substance, a suit against all parties in interest in the *res*, to the extent of their interests; and all such parties are parties to the suit, because they can intervene and make themselves actual parties, and bring their rights before the court. Consequently, all persons having any interest in the thing in controversy are concluded by the de-

erce in the suit; and of course all the rest of the world are concluded by the decree, because the judgment binds and settles the rights of all those who have any interest in the property. The cargo-owners in the present case might, therefore, if the suit had been conducted according to the rules which give to proceedings *in rem* their conclusive effect, have intervened and become actual parties, and without becoming actual parties would have been parties in interest, and bound by the decree. The decree necessarily determined that any right or interest claimed by any party as arising from the alleged collision was without merit. "The decree of the court in such case acts upon the thing itself, and binds the interest of all the world, whether any party actually appears or not. If it is condemned, the title of the property is completely changed, and the new title acquired by the forfeiture travels with the thing in all its after progress. If, on the other hand, it is acquitted, the taint of forfeiture is completely removed, and cannot be reannexed to it. The original owner stands upon his title, discharged of any latent claims with which the supposed forfeiture may have previously infected it. A sentence of acquittal *in rem* does, therefore, ascertain a fact as much as a sentence of condemnation. It ascertains and fixes the fact that the property is not liable to the asserted claim of forfeiture." STORY, J., in *Gelston* v. *Hoyt*, 3 Wheat. 246.

The supreme court, by authority of the laws of the United States, prescribes and regulates the mode of procedure in suits in admiralty by promulgating rules therefor. Rev. St. U. S. §§ 913, 917. Admiralty rule 9 requires process *in rem* to be served, not only by arresting the property, but by giving notice by publication of the arrest, and of the time assigned for the return of the process and the hearing of the cause. Under this rule the notice is as indispensable as the arrest to confer jurisdiction upon the court to adjudicate upon the rights of those interested in the property, and those who do not appear are not bound by the decree. Cooley, Const. Lim. 403. The rule has the force of a law of congress, and, in effect, declares that publication as well as seizure is essential to constructive notice of the proceeding to all those who have a right to be heard. In the first suit, not only was there no such service of process as the rule prescribes, but no default was entered upon the return of monition, and the property arrested was released upon giving security sufficient to satisfy the claims of the owners of the Shaw against the arrested steam-ship. Thus the suit was prosecuted and conducted throughout as one in which the only parties in interest were the formal parties to the suit,—the owners of the schooner and the owner of the steam-ship. We think neither party can invoke the decree which was rendered in it as an estoppel, beyond the extent to which it would operate as such if the suit had been an action *in personam* by the owners of the Shaw against the owner of the steam-ship. *Cooper* v. *Reynolds*, 10 Wall. 309; *Durant* v. *Abendroth*, 97 N. Y. 133; *McCall* v. *Carpenter*, 18 How. 297; *Windsor* v. *McVeigh*, 93 U. S. 274; *Pennoyer* v. *Neff*, 95 U. S. 714. In this view it is obvious that the cargo-owner is not concluded by it from re-examining the question whether the loss was caused by the

alleged collision between the schooner and the steam-ship. *Litchfield* v. *Goodnow*, 123 U. S. 549, 8 Sup. Ct. Rep. 210.

Inasmuch as the present action was commenced within six years from the time when the cause of action accrued, and there are no special circumstances to charge the cargo-owner with laches, we think there is no equitable bar to the suit upon the ground of delay. Where there is nothing exceptional in the case, courts of admiralty govern themselves by the analogies of common-law limitations. *The Sarah Ann*, 2 Sum. 206; *Southard* v. *Brady*, 36 Fed. Rep. 560; *Joy* v. *Allen*, 2 Woodb. & M. 303.

The owners of the schooner are precluded from re-examining the question whether the steam-ship was the instrument which caused the collision, if the adjudication between them and the owner of the steam-ship is an estoppel as between them and Sundberg. The general rule is familiar that there cannot be an estoppel which is not mutual; that is, which does not conclude the party invoking it as well as the other party. Consequently Sundberg cannot invoke the former adjudication as an estoppel unless, had it been decided that the steam-ship was the instrument of collision, it could have been invoked against him, so as to preclude him from re-examining that question in a subsequent suit against him by the owners of the schooner. He was not in privity with the owner of the steam-ship, within the rule that binds privies as well as parties to the estoppel of a judgment. Privity denotes mutual or successive relationship to the same rights of property, or, as is said in Bigelow, Estop. p. 142, "the ground of privity is property, and not personal relation." In view of the facts in the present case, it would seem that if there had been a decree against the steam-ship or its owner, and the owner had sought indemnity against him because the collision was caused by his personal misconduct, he would have been estopped from asserting that the steam-ship was not the instrument of collision. The master of a vessel is liable, not only to third persons, but to the owner, for loss resulting from a collision because of his own misconduct and negligence. Maude & P. Shipp. 459; Kay, Shipm. 994. Sundberg not only had notice of the suit, but he participated in its defense; and, although it does not appear that he was requested to assume its defense, he would not be permitted to re-examine the fact. *Chicago* v. *Robbins*, 2 Black, 418; *Robbins* v. *Chicago*, 4 Wall. 657; *Heiser* v. *Hatch*, 86 N. Y. 615; *Miller* v. *Tobacco Co.*, 7 Fed. Rep. 91. He was the agent of the owner of the steam-ship in the alleged trespass which was the cause of action asserted by the owners of the schooner; and the decree necessarily determined that he, as well as his principal, was innocent of the imputed wrong. Upon principle, all those who have litigated that question ought to be precluded, as against one another, from litigating it again. "Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, between those parties, should be closed forever." 1 Greenl. Ev. § 522. The owners of the schooner, having chosen to test their right against the principal, and having had their day in court,

ought to be precluded from testing it again on the same issue against the agent. *Emma Silver Mining Co.* v. *Emma Silver Mining Co.*, 7 Fed. Rep. 401. It was held in *Emery* v. *Fowler*, 39 Me. 326, in a carefully-considered opinion by the supreme court, that a party is not permitted to bring an action against a principal for an alleged trespass, and, after failing upon the merits, to subsequently bring one against the servant who acted by the order of the principal, and rely upon the same acts as a trespass. The court said:

"In such cases the technical rule that a judgment can only be admitted between the parties to the record, or to their privies, expands so as to admit it when the same question has been decided and judgment rendered between parties responsible for the acts of others."

See, also, *Kinnersley* v. *Orpe*, Doug. 517; *Warfield* v. *Davis*, 14 B. Mon. 40; *Castle* v. *Noyes*, 14 N. Y. 329; *Kitchen* v. *Campbell*, 3 Wils. 304; *Phillips* v. *Ward*, 33 Law J. Exch. 7.

It is unnecessary to the present decision to hold that the former judgment would not estop the owners of the schooner if Sundberg had not participated in defending the suit; but, as the facts are, we think it is a good estoppel. The decree of the court below is reversed, with instructions to dismiss the libel as to all the libelants except the Virginia Home Insurance Company, and as to that libelant to overrule the exceptions to the amended libel, and to take such further proceedings as may be proper, in conformity with this opinion.