### DONALD v. GUY et al.

#### (District Court, E. D. Virginia. January 28, 1905.)

1. COLLISION—STEAM AND SAILING VESSELS CROSSING—VIOLATION OF RULES.
   It is the duty of the navigator of a steamer approaching a sailing vessel on a crossing course, under Inland Navigation Rules, arts. 20–23 (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), which require the steamer to keep out of the way, and if necessary to slacken speed, stop, or reverse, to act in time to avoid risk of collision, and he has no right to keep his course and speed on the assumption, or in the expectation, that the sailing vessel will change her tack; and the presence of a passing steamer, instead of furnishing an excuse for violating the rules, renders their observance and the exercise of precautionary care all the more necessary.

2. SAME—NEGLIGENT NAVIGATION BY PILOT.
   The pilot of a steamer having her navigation in charge *held*, under the evidence, solely in fault for a collision with a crossing schooner in Chesapeake Bay, for failing to change his course or speed until collision was unavoidable, although the schooner kept her course and speed as required by the rules.

3. SAME—RIGHT TO RECOVER COLLISION DAMAGES PAID FROM PILOT—LACHES.
   The owner of a vessel is not debarred from maintaining a suit against her pilot to recover the amount of damages paid on account of a collision

which occurred through the pilot's negligence by the fact that such damages were paid without suit, nor is his right of action barred by laches where suit is commenced within the time allowed by the statute of the state to sue at law on similar claims.

In Admiralty.    Suit to recover damages arising from alleged neglect of pilot.

On the early morning of the 14th of January, 1901, a collision occurred in Chesapeake Bay, near Thimble Light, between the George Churchman, a three-masted schooner, and the steamship Santuit, at the time in charge of respondent Guy, a member of the Virginia Pilot Association.    Subsequently to the collision, upon threatened suit by the Churchman against the Santuit, the latter adjusted and paid the damages occasioned by such collision, amounting to $3,175, and Donald, the owner of the Santuit, afterwards filed this libel against the pilot and 26 others, the individual members of the Virginia Pilot Association, to recover the amount thus paid, alleging that the collision in question resulted solely from the negligence of the pilot, Guy.    Exceptions were duly taken to this libel, raising the question of the liability of the pilots' association, and the individual members thereof, for the acts of one of them, and whether or not, if liable, they should be held to answer at the suit of the libelant, who voluntarily settled the claim asserted against his steamship.    The legal questions thus raised were decided adversely to the exceptants, and will be found reported in 127 Fed. 228, to which reference may be had.

Hughes & Little, for libelant.
R. C. Marshall and D. Tucker Brooke, for respondents.

WADDILL, District Judge.    This case is now before the court upon its merits, the legal questions having been determined as heretofore stated.    The sole question at this stage is, whose fault brought about the collision?  and in this connection it should be borne in mind that the Santuit, having elected to pay the damages sustained by the Churchman without legally contesting the question of fault, must make out its case against the respondents with the same definiteness and certainty that the Churchman would have been required to establish its case in a suit against the Santuit.

At the time of the collision the Santuit, in charge of the respondent Guy, a member of the Virginia Pilot Association, was coming in from the Capes, and some time before reaching a point opposite Thimble Light sighted the schooner Churchman on her port bow, moving on an intersecting course with the said steamer, and when about opposite Thimble Light, in mid-channel, collided with the schooner, causing the injury to her to recover damages for which this suit is brought.    The question is, whose negligence brought about this collision?  and in passing thereon it will not be necessary to review at great length the evidence adduced by the respective parties, further than to say that the same has been fully considered, and the conclusion reached by the court is that the collision was the result solely of the negligence of the pilot Guy, in charge of the steamship Santuit, in failing to properly and seasonably observe the customary rules and regulations prescribed for the government of steam vessels, in the position in which he, the pilot, was placed, at and about the time of this collision, with reference to the Churchman.    These rules, embodied in articles 20, 21, 22, and 23 of the Inland Rules of Navigation (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]) are too well understood in cases of this character to need special

amplification. Suffice to say, they impose upon the steam vessel the duty of keeping out of the way of the sailing vessel under the circumstances of this collision, and, if needs be, to slacken her speed, stop, or reverse, and require that the sailing vessel shall keep on her course and speed. That the respondent Guy on this occasion failed to observe these regulations is manifest from his own testimony. The weather was good; the night light; the sea calm, with ample room for all purposes of navigation; the pilot observed the Churchman apparently crossing his course 12 or 15 minutes before the collision, and some two miles distant, and nevertheless continued on his course without changing the same, or lessening or slackening speed, until within such close proximity to the Churchman, who in the meantime had confessedly continued on her course and speed, that a collision was unavoidable; and in that way collided with the Churchman, causing her serious damage. The navigator of the Santuit cannot, under the circumstances, escape liability; and while it is claimed that to some extent a passing steamer caused him to continue on his course and speed, and that he was in part misled by the schooner's lowering her fore gaff topsail, which he construed to mean that the Churchman was about to change her tack ·from the port to starboard—which she did not in point of fact do—it is quite apparent from the whole evidence that the passing steamer did not and should not have interfered with the navigation of the Santuit. It was the duty of the navigator of the Santuit not only to have avoided the collision with the Churchman, but to have avoided the risk of collision, and that there was such risk of collision is apparent from the result which followed. The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126. In that case the Supreme Court said:

"The lesson that steam vessels must stop their engines in the presence of danger, or even of anticipated danger, is a hard one to learn; but the failure to do so has been the cause of the condemnation of so many vessels that it would seem that these repeated admonitions must ultimately have some effect."

The Richmond (D. C.) 114 Fed. 208, 213; The Elizabeth (D. C.) 114 Fed. 757.

The presence of the passing steamer should have caused the Santuit's navigator to exercise greater care in the management of his vessel, and to have kept her under control, so as to avoid the contingencies liable to arise from the exigencies of the position in which he was thus placed, and he should not have speculated upon the possible change of course of the schooner by tacking.

Counsel for the respondents in argument again raised the legal question heretofore passed upon in overruling the exception as to the right to maintain the suit against the respondents, because of the failure legally to resist the same; and, further, that the same should not now be entertained because of the laches of the libelant in its institution. Upon the first proposition it may be said, in passing, that the court sees no reason to change its ruling in that respect heretofore made. Donald v. Guy (D. C.) 127 Fed. 229, 230.

Upon the question of laches, while the same is not raised formally and properly, and perhaps in a way that it could be considered at all, still it does not appear upon the facts here that there exists such laches as

would disentitle the libelant to recover. The Churchman, had the damages not been settled, would have been entitled to bring this suit either against the Santuit in rem or her owner at the time of the institution of this suit; and it cannot be said, under the circumstances of this case, that there exists any special consideration which would prevent the libelant Donald, the owner of the Santuit, from maintaining a like cause of action against the respondents. When there is nothing exceptional in the case, courts of admiralty govern themselves by the analogies of the common-law limitations, and under the Virginia statute the institution of this suit would be clearly within the statutory time. The Sarah Ann, 2 Sumn. 206, Fed. Cas. No. 12,342; The Martino Cilento (D. C.) 22 Fed. 859; Southard v. Brady (C. C.) 36 Fed. 560; Bailey v. Sundberg, 49 Fed. 583, 586, 1 C. C. A. 387; Nash v. Ingalls, 101 Fed. 647, 41 C. C. A. 545.

While the failure of the libelant to contest legally with the Churchman the right of recovery in this case should not, in the opinion of the court, disentitle him to a recovery herein, nor the delay which has occurred prevent the maintenance of this proceeding on the part of the libelant, the court thinks it proper to say that the better practice would have been on the part of the Santuit, purposing to maintain the liability of the pilot for the collision, to have forced the Churchman to contest the same, and by proper proceedings had to have brought in the pilot; and, while the delay that has occurred is not such as should prevent a recovery, still the libelant ought to have exercised a greater degree of diligence in instituting the suit than he did.

It follows from what has been said that a decree should be entered determining that the collision was caused solely by the fault of the pilot Guy.