CRISCUOLO et ux. v. ATLAS IMPERIAL
DIESEL ENGINE CO. et al.

No. 7627.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1936.

H. W. Hutton, of San Francisco, Cal.,
for appellants.

Thomas A. Thacher, Harrison A. Jones, and W. Kevin Casey, all of San Francisco, Cal., for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree in equity. Appellants' bill alleges they are owners and payees of a promissory note from a former owner of the oil screw General Pershing, secured by a mortgage of the vessel made before launching and recorded in the recorder's office in Monterey county, where the vessel was under construction. The bill sought to impose a trust upon the funds received by the appellee Atlas Imperial Diesel Engine Company from a sale of the vessel made in an admiralty proceeding in rem commenced and litigated in the same District Court, on the ground, first, that the decree and sale were void for want of jurisdiction in rem, and, second, that if the decree is valid, fraud was committed on appellants in its procurement.

The libel was filed on the claim of a repairman for $83.90 against the oil screw General Pershing. Monition was issued, the vessel seized by the marshal, a purported publication of a notice of the seizure and of the monition was given, and thus jurisdiction sought to be obtained. Proclamation was made and the owner did not appear. But one party appeared, the Atlas Company, claiming to have a nonmaritime mortgage on the vessel. The owner and all other claimants were defaulted. A decree was made in favor of the libelant for its claim of $83.90 and it was declared a lien upon the vessel. Prior to the entry of the default, the Atlas Company petitioned to share in the proceeds of any sale of the vessel by virtue of its claimed nonmaritime mortgage securing a promissory note alleged to be unpaid and amounting, with interest, to $7,194.14 on the day of the entry of the default.

The evidence shows that the maritime claimant for $83.90 and the nonmaritime mortgage claimant, which could not file a libel itself, U. S. v. Rizzo, 297 U.S. 530, 56 S.Ct. 580, 80 L.Ed. 844, made common cause and had the same proctors throughout the prosecution of the libel. This proceeding, if successful, enabled the Atlas Company to litigate its $7,194.14 mortgage claim in the United States court in admiralty, which otherwise it would have been obliged to litigate in equity in the state court, both the parties to the note and mortgage being citizens of the state of California. Likewise, it subjected other nonmaritime mortgages to admiralty, with its mere seizure and limited publication and absence of personal service in obtaining jurisdiction of the res.

The decree, after finding the amount due upon the mortgage note to the Atlas Company, ordered a sale of the vessel. The marshal gave a purported notice of sale and his return shows that the vessel was sold for $3,000.

The appellants claim that jurisdiction in rem was never acquired for adjudication of the maritime lien claimed for $83.90 against the owner or against any person who would be affected by an adjudication of the maritime liens on the vessel or for the adjudication of claims of the nonmaritime liens against the proceeds of the sale in the registry. Obviously, if this claim of failure to acquire jurisdiction in rem is well founded the decree in the admiralty proceeding is void. All of the admiralty proceeding that remains as valid and alive is the pending libel of the supplier on his maritime lien. While the marshal may or may not be empowered to regain possession of the res, he no longer holds it in the custody of the court.

If the appellants' contention that the proceedings after the filing of the libel are invalid and the decree is void is correct, it is apparent that appellants have not been prejudiced. At all times since the admiralty court lost possession they have been free to bring their suit to foreclose their lien in a proper tribunal in a proceeding in equity.

Our analysis of the facts agrees with appellants' contention that the court never acquired jurisdiction in rem to take any action whatsoever in the determination of the liens on the ship or claims against the funds in the registry. It is, therefore, unnecessary for us to consider appellants' further contention that if the decree and sale be valid, the Atlas Company should hold the funds received from the sale impressed with a trust obligation to appellants arising out of alleged fraud committed by the Atlas Company in the process of the maritime litigation.

Appellants' claim of failure to acquire jurisdiction in the admiralty proceeding is based upon the facts pleaded in the answer

of the Atlas Company. After pleading in detail all of the steps in attempting to acquire jurisdiction in rem, the Atlas Company's answer alleges: " * * * that reference is hereby made to the records, papers and pleadings on file in said admiralty cause for a more detailed description and account of the proceedings therein."

The last clause impleaded the "records, papers and pleadings" in the admiralty cause pending in the same District Court and hence that court could consider them in determining the tendered issue of fact. Aspen Mining & Smelting Co. v. Billings, 150 U.S. 31, 38, 14 S.Ct. 4, 37 L.Ed. 986; National Fire Ins. Co. v. Thompson, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881. These records, papers, and documents so made a part of the pleadings were not incorporated in the transcript on appeal and this court has required their production by an order which is, in effect, in diminution of the record. To fail so to do would have one pleading before the trial court and another on appeal.

Concerning these proceedings in the admiralty case, the appellants assign and specify error as follows:

" * * * in not finding and deciding that such proceedings as were taken in such proceeding were unlawful and void, * * *

"The Court erred in finding and deciding that all procedure and other steps required by law or the Admiralty Rules to be taken therein were duly taken and that all notices required by law or the Admiralty Rules to be given or published were duly given and published. * * *

"The Court erred in finding and deciding that plaintiffs either unreasonably or without adequate cause, and/or to the prejudice of the defendants, failed to appear, or to assert or file their claim, or to contest that of libelant T. F. Russell, or that of intervening libelant, Atlas Imperial Diesel Engine Co., or to oppose the sale of the vessel 'General Pershing' or the alleged or claimed confirmation of such sale or to take any steps whatsoever in the admiralty proceeding aforesaid, and erred in finding and deciding that no adequate or legal, or equitable excuse for said or any failure to do so has been shown herein. * * *

"The Court erred in not finding and deciding that the violations of the admiralty rules relating to the sale of property in an admiralty proceeding herein did not deprive the plaintiffs of their legal rights under their mortgage.

"The Court erred in not finding and deciding that plaintiffs were deprived of their rights to intervene against the proceeds of the sale of the vessel 'General Pershing' by the violation of the Rules in Admiralty relating to sales.

"The Court erred in not finding and deciding that the notice required by law on the seizure of a vessel in an admiralty proceeding herein was not given."

To obtain jurisdiction to proceed to a decree in rem in admiralty, there are two essential requirements. First, the vessel must come into the possession of the court by seizure under adequate warrant of arrest. The Berkeley (D.C.) 58 F. 920. This gives jurisdiction of the subject-matter of the libel and over the res. Before the court has power to make a decree depriving the owner or any lienor not appearing of his interest in the res, a second step must be taken. This second requirement is the public notice of such seizure and the pendency of the action as required by the rules of the Supreme Court and of the District Court in which the libel is filed. The giving of notice is as essential to the power to proceed to decree affecting the non-appearing owner or a lienor as is the seizure. Bailey v. Sundberg (C.C.A. 2) 49 F. 583, certiorari denied 154 U.S. 494, 14 S.Ct. 1142, 38 L.Ed. 1078; The Harrogate (C.C.A.2) 112 F. 1019, certiorari denied 184 U.S. 698, 22 S.Ct. 937, 46 L.Ed. 764.

In both these cases the Circuit Court of Appeals determined that proceedings in prior libels in rem adjudicated nothing against nonappearing parties having rights in rem against the seized vessel, because no public notice of the seizure was given as required by the rules of court. The prior proceeding in rem in the Sundberg Case, supra, was a libel against the steamship Newport by the owners of the schooner Shaw for damages resulting from a collision between the two vessels.

"Process was issued on that day, in the usual form, to the marshal of the court, requiring him to attach the steam-ship and to give due notice to all persons having anything to say, why she should not be condemned and sold, to appear in the district court on the 13th day of May then

next, and interpose their claims and make their allegations. The process was executed by the marshal only so far as to attach the steam-ship. He did not publish or otherwise give any notice, and there was no proclamation or default on the return-day. Prior to the return-day of the process the owner of the steam-ship appeared and filed an answer. No other person appeared." Bailey v. Sundberg, supra, 49 F. 583, 584.

The court proceeded to decree and dismissed the libel holding the steamship without fault. Subsequently the owners of the cargo on the schooner Shaw sued Sundberg, the master of the Newport, for his negligence in causing the collision. The owners of the Shaw also joined in the libel. The Circuit Court of Appeals held that since Sundberg had actually participated on behalf of the owners in the original proceeding against the Newport, the decree exonerating the Newport was res judicata between Sundberg and the owners of the Shaw, and, since that decree had found the Newport without fault, the libel was dismissed as to the claim of the owners of the Shaw.

As to the owners of the cargo on the Shaw it was held that, since no public notice was given as to the libel of the owners of the Shaw herself against the Newport and as to her seizure, and since the owners of the Shaw's cargo had not appeared in that action, jurisdiction had not been acquired as to them. The finding of absence of fault on the part of the Newport and her captain was, therefore, held not res judicata in their suit against Sundberg. The decree of the lower court holding that the decree in the former case was res judicata against the owners of the Shaw's cargo was reversed and the District Court ordered to take further proceedings on the cargo owners' claims. The Circuit Court of Appeals held as follows: "The supreme court, by authority of the laws of the United States, prescribes and regulates the mode of procedure in suits in admiralty by promulgating rules therefor. Rev.St.U.S. §§ 913, 917 [28 U.S.C.A. §§ 723, 730]. Admiralty rule 9 requires process in rem to be served, not only by arresting the property, but by giving notice by publication of the arrest, and of the time assigned for the return of the process and the hearing of the cause. Under this rule the notice is as indispensable as the arrest to confer jurisdiction upon the court to adjudicate upon the rights of those interested in the property, and those who do not appear are not bound by the decree. Cooley, Const.Lim. 403. The rule has the force of a law of congress, and, in effect, declares that publication as well as seizure is essential to constructive notice of the proceeding to all those who have a right to be heard. In the first suit, not only was there no such service of process as the rule prescribes, but no default was entered upon the return of monition, and the property arrested was released upon giving security sufficient to satisfy the claims of the owners of the Shaw against the arrested steamship. Thus the suit was prosecuted and conducted throughout as one in which the only parties in interest were the formal parties to the suit,—the owners of the schooner and the owner of the steam-ship. We think neither party can invoke the decree which was rendered in it as an estoppel, beyond the extent to which it would operate as such if the suit had been an action in personam by the owners of the Shaw against the owner of the steam-ship. Cooper v. Reynolds, 10 Wall.[308] 309 [19 L.Ed. 931]; Durant v. Abendroth, 97 N.Y. [132] 133; Doe ex dem. McCall v. Carpenter, 18 How. 297 [15 L.Ed. 389]; Windsor v. McVeigh, 93 U.S. 274 [23 L. Ed. 914]; Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565]. In this view it is obvious that the cargo-owner is not concluded by it from re-examining the question whether the loss was caused by the alleged collision between the schooner and the steam-ship." Bailey v. Sundberg, supra, 49 F. 583, 585, 586.

In The Harrogate, supra, the second libel, like the first, was in rem against the Harrogate. The Harrogate had been libeled by the owners of the steamship Hazelmere in the High Court of Jurisdiction of England, admiralty division. There was no arrest of the ship, but, as in the United States practice, the owners gave bail as substitution for the seizure and appeared. The English admiralty court held that the Harrogate was solely in fault in the collision. The owners of a cargo of oats on the Hazelmere libeled the Harrogate in the District Court for the Eastern District of New York. The case proceeded to hearing, and the only evidence of the fault of the Harrogate was the finding of the decree of the British admiralty court. The District Court held the decree was not res judicata as to the cargo owner

on the Hazelmere and dismissed the libel. The Circuit Court of Appeals sustained the dismissal on the ground that there was "no publication of arrest and of time assigned for the return of process and the hearing of the cause." Its opinion is as follows: "It seems unnecessary to do more than refer to the decision of this court in Bailey v. Sundberg, 1 C.C.A. 387, 49 F. 583, where the effect of a decree in a proceeding in rem in the admiralty was fully discussed, and it was held that cargo owners were not bound where the owners of the ship which carried it appeared voluntarily, and process was served by arrest of the vessel, *but with no publication of arrest and of time assigned for the return of process and the hearing of the cause.* We are referred to no authority to support the proposition that the effect of similar proceedings in England is more far-reaching than here. On the contrary, the testimony of a witness called as to English law would seem to indicate that, unless cargo owners were actually made parties of record, they would not be bound, even though the vessel was arrested and advertised. But be that as it may, we think Bailey v. Sundberg is controlling." (Italics supplied.) Id. (C. C.A.) 112 F. 1019, 1020.

The necessity for publication as well as seizure to confer jurisdiction and the analogy between this process and the service required at law and in equity is stated by the Supreme Court in Taylor v. Carryl, 20 How.(61 U.S.) 583, 599, 15 L.Ed. 1028:

"In courts of common law, the forms of action limit a suit to the persons whose legal right has been affected, and those who have impaired or injured it. In chancery, the number of the parties is enlarged, and all are included who are interested in the object of the suit; and as the parties are generally known, they are made parties by name and by special notice.

"In admiralty, all parties who have an interest in the subject of the suit—the res—may appear, and each may propound independently his interest. The seizure of the RES, *and the publication of the monition or invitation to appear,* is regarded as equivalent to the particular service of process in the courts of law and equity." (Italics supplied.)

Seizure by attachment in suits in personam has been held void for want of jurisdiction where the process prescribed by the rules of the District Court for the Northern District of California is not followed, Atkins v. W. R. Carpenter & Co. (D.C.N.D.Cal.) 273 F. 828, and where not complying with the Supreme Court rule, The Bremena v. Card (D.C.S.C.) 38 F. 144, 147.

In the admiralty proceedings here involved neither the owner of the General Pershing nor any adversary admiralty lien claimant appeared. Hence if there was no publication of notice to confer jurisdiction, the decree is void as to appellants and the owner. The libelant and the Atlas Company have no justiciable issue between them here, and we are not required to adjudicate their relationship inter se.

Congress by statute has given to the rule making power of the Supreme Court and District Courts the determination of the process by which jurisdiction in rem is created. This rule-making power was first recognized and specifically authorized by the Act of Congress of May 8, 1792, c. 36, § 2, 1 Stat. 276. The statute now reads as follows: "§ 723. *Mesne process; proceedings in equity and admiralty.* The forms of mesne process and the forms and modes of proceeding in suits of equity and of admiralty and maritime jurisdiction in the district courts shall be according to the principles, rules, and usages which belong to courts of equity and of admiralty, respectively, except when it is otherwise provided by statute or by rules of court made in pursuance thereof; but the same shall be subject to alteration and addition by the said courts, respectively, and to regulation by the Supreme Court, by rules prescribed, from time to time, to any district court, not inconsistent with the laws of the United States. (R.S. § 913.)" 28 U.S.C.A. § 723.

The Supreme Court Admiralty Rule 44 (28 U.S.C.A. following section 723) has given to the District Courts the right to make supplementary rules not inconsistent with the Supreme Court rules.

"Rule 44. Right of Trial Courts to Make Rules of Practice.

"In suits in admiralty in all cases not provided for by these rules or by statute, the District Courts are to regulate their practice in such a manner as they deem most expedient for the due administration of justice, provided the same are not inconsistent with these rules."

Supreme Court Admiralty Rule 10 (28 U.S.C.A. following section 723) prescribes

for acquisition of jurisdiction in proceedings in rem as follows:

"Rule 10. Process in Suits in Rem

"In all cases of seizure, and in other suits and proceedings in rem, the process, if issued and unless otherwise provided for by statute, shall be by a warrant of arrest of the ship, goods, or other thing to be arrested; and the marshal shall thereupon arrest and take the ship, goods, or other thing into his possession for safe custody, and shall cause public notice thereof and of the time assigned for the return of such process and the hearing of the cause, to be given in such newspaper within the district as the district court shall order; and if there is no newspaper published therein, then in such other public places in the district as the court shall direct."

It is apparent that, because not prescribed by Admiralty Rule 10, there is left to the order of the District Courts or its rule making power, (1) the form of the process; (2) the *assignment* of the *time* for the *return of such process;* (3) the *assignment* of the *time* of *hearing* of the cause; (4) the 'description of the *"cause"* to be heard, so as to identify it to the claimants to whom "public notice" shall be given; (5) the length of time of "such" public notice of the seizure, the date of return of the monition, and the date of the hearing of the cause.

The District Court for the Northern District of California has given the necessary form to the practice in acquiring jurisdiction in rem, so generally outlined by Admiralty Rule 10, in its Admiralty Rule 24, as follows:

"Rule 24. Notice of Arrest—Publication of.

"*Notice of the arrest of property in suits in rem,* other than in behalf of the United States, shall be published and affixed as required in case of seizures on the part of the United States, unless a Judge by special order directs a shorter notice than *14 days;* the notice need contain only *the title of the suit, the nature of the cause of action, the amount demanded, the time and place of the return of the monition,* and the names of the Marshal and proctor, and *shall direct all persons interested to appear, or that default and condemnation will be ordered.* The Recorder is designated as the paper in which such notice shall be published." (Italics supplied.)

Rule 25 provides that no trial shall be had or decree rendered until after *"publication of process* in that case shall be *duly* made." The defects pointed out in appellants' brief are:

"The rules require a 14-days notice; the monition was made returnable on July 21st, 10 days; the rules require that the day of the return of the monition shall be published; it was never . published. The return day was July 21st, and the publication gave the return day as July 28th." ("July" should be read as "June.")

The form of the process in that court, as shown in this case, is a monition to the marshal, commanding him as follows:

"You are therefore hereby commanded to attach the said vessel, her tackle, etc. and to retain the same in your custody until the further order of the Court respecting the same and to give due notice to all persons claiming the same, or knowing or having anything to say why the same should not be condemned and sold pursuant to the prayer of the said Libel, that they be and appear before the said Court, to be held in and for the Northern District of California, on the 21st day of June, A. D. 1932, at 10 o'clock in the forenoon of the same day, if that day shall be a day of jurisdiction, otherwise on the next day of jurisdiction thereafter, then and there to interpose a claim for the same, and to make their allegations on that behalf.

"And what you shall have done in the premises do you then and there make return thereof, together with this writ."

The return day of the process is indorsed thereon as follows: "Monition returnable June 21, 1932." It is apparent that a monition issued on the 11th day of June and returnable on the 21st day of June cannot have a 14-day public notice "of the time assigned for the return of such process" as required by Supreme Court Admiralty Rule 10. The brief of appellants very properly says concerning the monition: "Of course that was not and could not be the basis of any publication giving 14 days notice."

With regard to obtaining jurisdiction by such public notice the situation here, as appears from Taylor v. Carryl, supra, is analogous to one where a statute required a summons to be served 14 days before the defendant will be defaulted if not appearing, while the face of the summons notified

him to appear in ten days. In the absence of a voluntary appearance no default judgment could be rendered on such process.

The marshal's return with its conclusion of law that on June 11, 1932, he gave *"due* notice to all persons claiming the same [General Pershing] that this Court will on the *21st day of June, 1932,* * * proceed to trial," etc., does not tell them that they must be there by 10 o'clock a. m. More important still, even if the court's officer, the marshal, can usurp the court's function, and give his conclusion of law as to "due" notice, instead of the facts as to what he actually did, the return shows 10 days' notice, while the rule required 14.

The notice which appellants claim did not confer jurisdiction in rem was not published by the Marshal until June 14th. That is to say, but 7 days before the return day on the monition, June 21st. Even if the notice had referred to the return day as required by Supreme Court Admiralty Rule 10, it would not be for the 14 days of publication required by rule 24 of the District Court. But the publication, instead of complying with Admiralty Rule 10, and giving notice of the return day, does not mention it. It reads as follows:

"Monition.

"In the United States District Court for the Northern District of California.— In Admiralty.

"T. F. Russel, v. American Gas Screw 'General Pershing.'—No. 21049(L.)

"In obedience to a warrant of seizure to me directed in the above-entitled cause, I have seized and taken into my possession the following described property, to-wit: American Gas Screw 'General Pershing,' for the causes set forth in the libel now pending in the U. S. District Court for the Northern District of California, at San Francisco, California.

"I hereby give notice to all persons claiming the said described American Gas Screw, 'General Pershing,' or knowing or having any thing to say why the same should not be condemned and forfeited, and the proceeds thereof distributed according to the prayer of the libel, that they be and appear before the said Court, to be held in and for the Northern District of California, at the United States courtroom, in the City of San Francisco, on the *28th* day of June, 1932, *at 10 o'clock on the forenoon* of that day, if the same shall be a day of jurisdiction, otherwise on the next day of jurisdiction thereafter, then and there to interpose a claim for the same, and to make their allegations in that behalf. (Italics supplied.)

"Fred L. Esola,

"U. S. Marshal, Northern District of California.

"By Wm. J. Ferguson, Deputy.

"Thacher & Jones, Proctors for Libelant.

"June 14-1t."

Because the process fixed a return day, of which the publication could not possibly give 14 days' notice, and because the notice published did not give the return day of the process, no jurisdiction to render the decree was acquired and it is hence void.

Other failures to comply with the rules appear. We point them out, but do not pass on their effect on jurisdiction. They are properly within appellants' specifications of error, but are only indirectly discussed in their briefs.

The notice does not describe the "cause," of which Admiralty Rule 10 says public notice must be given, as required by rule 24 of the District Court. It gives no description of the "nature of the cause of action," here the claim of a repairman. It does not give the "amount demanded," here $83.90. These it may be contended are essential elements of advice to the party sought to be served by public notice, usual in summons, and fundamentally proper requirements to bring in lien claimants and others affected by the decree which will bind them whether they be in China or Kamchatka.

Furthermore, the notice does not comply with the requirement of rule 24 by stating that if the "persons interested" do not appear "that default and condemnation will be ordered." Addressing the notice as it does to those "knowing or having anything to say why the same should not be condemned and forfeited" does not seem compliance with the rule that they shall be advised that if they do not appear "default and condemnation will be ordered." Here again it should be noted that the rules have the force of statutes.

It is thus apparent that whatever may be the obligation of the holder of moneys received from the void sale of the vessel to return it to some person, or the relationship between the two appearing lien claimants, neither the void decree nor the sale

has prevented the appellants from asserting, at any time, all their rights, whatever they may be, exactly as they would have if nothing had been done by appellees. The vessel has passed out of the custody of the admiralty court and may be made the subject of foreclosure proceedings as if there had been no seizure at all.

Since there were then no adverse parties appearing, the District Court has had nothing before it but the libel. This gives it jurisdiction of the subject-matter of the libel, a claim for materials furnished, but without either res or adversary.

■ After loss of possession the federal court had no continuing hold on or jurisdiction over her which a state tribunal or foreign nation must respect. The state stands in the same position to the vessel as a foreign nation.

"It is not perceived, therefore, that the relation of Massachusetts to the Union has any effect upon the title to this vessel. It stands as if that State were an independent sovereign State, unconnected with the other States of the Union. The question is the same as if this assignment had been made in London by a British insolvent court, adjudicating upon the affairs of a British subject." Crapo v. Kelly, 16 Wall. (83 U.S.) 610, 624, 21 L.Ed. 430.

A United States admiralty court, certainly, could properly seize a Canadian vessel which had been improperly released from seizure by a Canadian court. Otherwise no nation would know whether it had jurisdiction in rem where its process brought into its possession a foreign vessel. So here with a mortgage foreclosure of the General Pershing in the California court.

The Rio Grande, 23 Wall.(90 U.S.) 458, 23 L.Ed. 158, holds nothing more than that where there has been a seizure, appearance of a claimant, decree for one or another party, and an appeal to the Circuit Court, that court does not lose jurisdiction of the subject-matter of the dispute between the parties because, pending appeal, the marshal loses possession of the vessel. They were still before the court and the libelant could not litigate the subject-matter of that dispute, by a seizure of the vessel by another court on a libel alleging the same subject-matter of claim. This does not mean that if there had been no publication in the original suit bringing in a third party, that third party could not libel and seize the vessel which was no longer in the possession of any court. Pacific Coast S. S. Co. v. Bancroft-Whitney Co. (C.C.A.9) 94 F. 180; Cooper v. Reynolds, 10 Wall. 308, 316, 19 L.Ed. 931; The Brig Ann, 9 Cranch, 289, 290, 291, 3 L. Ed. 734, and Taylor v. Carryl, 20 How.(61 U.S.) 583, 599, 15 L.Ed. 1028, hold no more than that possession by seizure confers jurisdiction in rem over the vessel. None suggests that after the possession of the court of one state is lost the court of another state may not take possession and adjudicate a lien upon her.

■ The owner of the mortgaged vessel and the Atlas Company, claiming rights under its later mortgage, are parties defendant. It might therefore be claimed that the rights of the parties under their respective mortgages could be adjudicated in this action. However, the bill fails to allege the necessary diversity of citizenship. The defendants are alleged to be citizens of California and plaintiffs' citizenship is not disclosed, they being described merely as residents of California.

Having found that the decree and sale in the admiralty proceeding are void, the relief sought here is not ancillary to the admiralty proceeding. It does not seek to have the admiralty decree enforced in any particular way; it does not allege that the appellants have appeared in the admiralty proceeding and are requesting us to force action by any of the parties there with reference to that proceeding. As said, the appellants have been entitled at all times since the admiralty court lost possession of the vessel to pursue their remedy in the state court or to appear in the admiralty proceeding and await the acquisition of the jurisdiction in rem by proper notice. For the reasons above stated a decree is ordered dismissing the bill of complaint.

Affirmed.